### JOSEPH BARRETT *vs.* DAVID WHITE *et a.*

Hay in a barn may be attached and may be removed, when a removal is necessary for its security.

But if a sheriff, without any necessity, removes hay thus attached, or if he wantonly remove it in an unfit and improper season, and it is thereby injured, such removal is an abuse of his authority, which will render him liable as a trespasser *ab initio.*

THIS was an action of trespass, for taking and carrying away the plaintiff's hay, rye, and oats, on the 2d December, 1822. *White* pleaded in bar, that, being a deputy sheriff, he took the articles mentioned in the declaration by virtue of a writ of attachment, issued against the plaintiff.

To this the plaintiff replied, that after the goods were attached, the said *White* abused and wasted them ; and issue was joined between the parties upon the abuse and waste.

*Joseph Haskell*, another defendant, pleaded in bar, that he purchased a writ against the plaintiff, and delivered the same to *White*, who, by virtue thereof, took the hay, &c.

To this the plaintiff replied, that after the goods were attached, *A. Haskell* and *J. Haskell*, by the command of the said *Joseph*, the defendant, abused and wasted the goods ; and issue was joined between the parties upon the abuse and waste.

The other defendants severally justified as the servants of *White*, and the plaintiff replied, that they severally abused and wasted the goods attached ; and issue was joined upon the abuse and waste.

The cause was tried here at October term, 1823, when it appeared in evidence, that the plaintiff, an inhabitant of Concord, in Massachusetts, owned a farm in Troy, in this state, which is distant from Concord about fifty miles ; that *White* being a deputy sheriff, and having two writs of attachment against the plaintiff, on the morning of December

2d, 1822, soon after midnight, went to the plaintiff's barn in Troy, and attached a large quantity of hay, and also a quantity of rye and oats ; and that without making any attempt to secure the hay, &c. in the place where found, or giving the debtor any opportunity to procure a person to become responsible for them, he immediately procured teams and removed them in very unfavourable weather, whereby the hay and grain were much injured and wasted. It also appeared, that the other defendants were present, and aiding and assisting the said *White.*

The court instructed the jury, that when articles are attached upon mesne process, which cannot be removed without injuring them, it was the duty of the officer, who made the attachment, to endeavour to secure them in the place where found ; that if this be found impracticable, he should give the debtor notice, in order that he might prevent the removal by paying the debt, or by procuring some person to become responsible for the goods attached ; that the officer would be justified in putting the goods into the custody of some person at the expense of the debtor, until the debtor could be notified ; that in the present case, if the jury were satisfied that *White* immediately proceeded to remove the hay, &c. without making any attempt to secure it in the place where found, or giving the debtor an opportunity to prevent the removal, he and all those who assisted him must be considered as trespassers, and the plaintiff entitled to recover whatever damages he had sustained by the removal of the property.

The jury returned a verdict in favour of the plaintiff, and assessed the damages to the amount of $60.

The defendants moved the court to grant a new trial, on the ground that the jury had been misdirected.

*Chapman* and *L. Chamberlain,* for defendants.

*Levi Chamberlain,* for the defendants.

It was not contended by the plaintiff, or intimated by the court, at the trial, that the property taken by *White* was exempt from attachment. Indeed, such an hypothesis would be at variance with the uniform practice in this state ever since its settlement. Long before the adoption of our con-

stitution, the common law, exempting this kind of property from a " distress," (to which our process of attachment is analogous,) was materially modified. By the statute of the 2d of *W. & M. Ch.* 5, " corn in sheaves or ricks, or loose in " the straw, or hay in barns or ricks, or otherwise," may be distrained ; and by the statute of 11th *Geo. II. Ch.* 19, crops may, when ripe, be separated from the freehold and distrained.

The dictum of chief justice *Parsons*, in *Bond vs. Ward*, (7 *Mass. Rep.* 123,) can hardly be considered as an adjudication, that hay and grain are exempt from attachment, even in Massachusetts. For in the case of *Penhallow vs. Dwight*, in the same volume, page 34, it is expressly decided, that corn found standing might be cut down by an officer having an execution, and sold as other personal property might be. It is not known, that the law makes any distinction as to the liability of personal property to be taken on mesne process and on execution. The same property is liable to be taken in both cases.

Taking it for granted, then, that this property was liable to attachment, the question to be settled is, whether an officer, making an attachment of personal property, which by law is liable to attachment, is justified in removing such property, so that it may be under his own custody, and out of the controul of the debtor, without his consent ?

If the uniform practice is to have any weight in the decision of this question, it would seem, that the case hardly admitted of an argument. Until very lately, it has been generally thought, both by lawyers and officers, that property attached on mesne process could be secured against subsequent attachment, only, by an actual taking and removal of it, so that it may be out of the debtor's reach. Indeed, this is the very definition of the term " attachment." In *Lane vs. Jackson*, (5 *Mass.* 174,) it is decided by the court, " that " in order to constitute an attachment, the officer must have " the actual possession and custody of the goods attached." " This," says chief justice *Parsons*, " is the legal import " of the word." " As to goods," says the same eminent udge, (*Watson vs. Todd et a.* 5 *Mass.* 274,) " the officer - must hold them in his actual custody, so that he can con-

" troul the possession." 1 *Pick. Rep.* 399, *Bedlam vs. Tuck-* " *er et a.* " Those goods and chattels, which can be seized " on execution, and those only, are liable to attachment." " The attaching officer must have the right to seize them " and to hold possession, so that they may be finally taken on " execution."

It is true, that by a convenient practice, officers are in the habit of taking from third persons accountable receipts, for property attached : but this is at the peril, and we contend, at the election of the officer. He is accountable to the party prevailing in the suit. He takes upon himself all the hazard both as to the responsibility and the integrity of the receiptor. In contemplation of law, the property is, notwithstanding the receipt, in the officer's custody ; and in a neighbouring state, it has been settled as law, that the receiptor has no legal remedy against any person, for taking property so situated out of his possession. 9 *Mass.* 104, 265.—14 *ditto* 217.

The removal of hay and grain may be more prejudicial to the debtor, and more inconvenient to the officer, than the removal of less cumbrous articles. But we contend, that if property is liable to attachment, it is lawful for an officer to remove it, even if a sufficient receiptor should be offered ; or that if any action will lie, it is a special action for oppressively and maliciously executing a legal process. *Purrinton vs. Loring,* 7 *Mass.* 388. In such an action, although the officer might be liable, yet those who assisted him would not be, unless implicated in the oppression or malice.

The place of the debtor's residence can make no difference in the application of the law. The officer was not obliged to send to Massachusetts to learn the will and pleasure of *Barrett,* as to the disposition of his property. Other business might call the officer elsewhere. *Barrett* might not choose to interfere in the affair. He might prefer to let the law take its course. It was not in the power of *White* to compel any one to take charge of the property. Nor would the nailing up the doors, or posting an advertisement on the barn, have been any security to *White. Barrett,* or his servant, might still have found ingress into the barn, and

have destroyed the offensive memorial upon the door ; and the property would still have been holden by an innocent purchaser, or a subsequent attaching creditor. Nor is the debtor compelled to suffer the property to remain on his freehold. The officer is justifiable in entering the close of the debtor, only for the purpose of executing the process. He has no right to keep the possession of the freehold without a process for that very purpose. 11 *East* 400.—*ditto* 305.— 1 *ditto* 139.

*Campbell vs. John on et a.* (11 *Mass.* 184,) is precisely like the case at bar. *Johnson* was a deputy sheriff. The other defendants were creditors of *Campbell*—sued out two writs and delivered them to *Johnson.* *Johnson* attached a quantity of *Campbell's* hay, and removed it two miles. The hay, amounting to five tons, the current price of which was eight dollars per ton, was afterwards sold on the executions for $24 60. *Campbell* was absent from home when the attachment was made. The court in that case say, that " if the prop- " erty was liable to attachment, the removal of it, and some " loss and expense necessarily incurred in serving the pro- " cess, although to be lamented, as prejudicial to the owner, " seem to be unavoidable, until the legislature provide some " other remedy."

This subject has been repeatedly before the legislature of the state. Hitherto that body has not seen fit to interpose its authority in the alteration or modification of the law.

The question to be decided is not, whether an officer can hold personal property attached, without removing it, as in the cases of *Baldwin vs. Jackson,* (12 *Mass.* 131) ; *Denny vs. Warren,* (16 *ditto* 420,) and *Gordon vs. Jenney,* (*ditto* 465.) Those cases only go to shew, that property attached, and not removed, may be holden against subsequent attachment with notice. But no case, we believe, is to be found, which makes an officer, who removes property attached by him, liable as a trespasser.

*J. Parker,* for plaintiff.

A sheriff in the execution of process committed to him must not be guilty of unnecessary force or of oppression. *Bac. Abr.* " *Sheriff*" *N.* 1. It is undoubtedly his duty to execute

all process with the least possible injury to the debtor, consistently with his own security, and that of the creditor. If he is guilty of an abuse, by misfeasance, he is a trespasser. *Bac. Abr.* " *Trespass*" *B.* and author. cited.—*Com. Dig.* " *Trespass*" *C.* 2.—1 *Salk.* 221, *Gargrave vs. Smith.*—1 *D. and E.* 12, *Oxley vs. Watts.*—*Selw. N. P.* 1246, " *Trespass*" 5.—1 *Chitt. Plead.* 186.—9 *East's Rep.* 301–303, *Phillips vs. Bacon.*—10 *Johns. Rep.* 253, *Sackrider vs. M'Donald.*—15 *Mass. Rep.* 82, *Melville vs. Brown.*—1 *N. H. Rep.* 91, *Blake vs. Johnson.*

The action of trespass is the proper remedy for such abuse, and not case. 5 *D. and E.* 648, *Day vs. Edwards.*—17 *Mass. Rep.* 244, *Campbell vs. Phelps*—10 *Johns. Rep.* 253, and other auth. before cited.

When a sheriff proceeds beyond the requisitions of his duty, and unnecessarily does an injury to the party, he becomes a trespasser. The question then is, whether it was necessary to the validity of the attachment, and to the security of the sheriff, that the hay, &c. should be immediately removed ? Whether, under the circumstances, it was the duty or right of the sheriff to commit this great and, we say, wanton injury to the plaintiff's property ?

It was formerly held, that goods could not be distrained, which, in consequence of the distress, could not be returned in the same plight, in which they were taken, as sheaves of corn, or hay in a cock or barn. Such seems to have been the doctrine as late as 7 *Mass. Rep.* 129, *Bond vs. Ward.* In England, however, by *stat.* 3, *W. & M.* articles of this description are liable to be seized for rent arrear on a demise, but they are to be locked up and detained in the place where found. If we here, without statute, admit the seizure on attachment, we may well follow the rule as to the security of the property after seizure.

It will not be contended in this case, that the hay was not liable to be attached, (2 *N. H. Rep.* 90, *Cilley vs. Jenness.* —11 *Mass. Rep.* 184, *Campbell vs. Johnson et a.*) but we do deem the removal wholly unnecessary and improper, and the time and manner, as testified by the witnesses, exhibited a case of most flagrant abuse.

We are not aware of any authority, which justifies a removal of hay attached, except it be that last cited, (11 *Mass.* 184) and, it is believed, that an examination, and comparison of that with later cases, will shew, that the reasons, there given to justify a removal, are exploded. The main question made in that case was, " whether hay in a barn is liable " to be attached in a civil action." The judge who delivered the opinion, appeared to think, that a removal was necessary to the validity and security of the attachment ; but this part of the case must be considered a mere dictum ; and later decisions in Massachusetts have established the law there that a removal of property attached is not necessary—that the officer need not have a personal possession, but that, if he " lock up the goods in the place where found." the attachment is valid. *Vide* 12 *Mass. Rep.* 131, *Baldwin vs. Jackson* ; *ditto* 495, *Train vs. Wellington.*—16 *Mass.* 420, *Denney vs. Warren* ;—*ditto* 468, *Gordon vs. Jenney.* So in 15 *Johns. Rep.* 428, *Farrington vs. Sinclair*, it was held, that an immediate removal of wood, which might have been removed without injury, was not necessary.

The authorities cited by the defendants will not be found to justify the doctrine, for which they contend.

That the plaintiff is entitled to a remedy for the injuries done him by defendants cannot be doubted ; and we believe it equally clear, that he has not mistaken his form of action.

GREEN, J. The question in this case is, not whether any action, upon the facts disclosed, can be sustained against the defendants, but whether those facts are, in law, sufficient to enable the plaintiff to maintain an action of trespass.

That the hay, &c. was attachable property is beyond doubt—the uniform practice, ever since our existence as a state, is, alone, sufficient to put at rest any doubts as to this right.

In Massachusetts the question has been agitated and solemnly settled in conformity to our practice. *Campbell vs. Johnson*, 11 *Mass. Rep.* 184.

Therefore, in *taking* the property mentioned in the plaintiff's declaration, the defendants did no more than their duty—one of them, *the officer*, acted in obedience to a precept in his

hands from lawful authority, and the others acted at his request and as his assistants ; if therefore they are liable in this action, it is not for any wrong done in taking the plaintiff's property, but because their subsequent conduct made them *trespassers ab initio*.

It is material then to ascertain what departure from duty makes an officer, having process, a trespasser from the beginning, because the rule for assessing damages depends upon it—if the defendants are trespassers *ab initio*, their defence wholly fails, and they are liable to pay the same sum in damages, which they would have been compelled to pay, if they had gone on without any precept or pretence of authority, and done all the acts proved upon them—but if they are liable only in case, and not in trespass, then they are answerable only for such sum in damages, as will compensate the plaintiff for the injury he has sustained by that part of their doings, which was illegal, irregular, and wrong ; and they were protected by the writ for that part, which was legal and proper.

There is no question but an officer, who, by virtue of a writ, lawfully takes property, may, by his subsequent abuse, become liable as a trespasser from the beginning ; and it is equally clear, that every irregularity and error, committed by such officer, will not make him a trespasser from the beginning.

The rule seems to be, that when the officer wholly departs from the course pointed out for him by the law, he may be considered as intending to do so from the beginning, and as making use of the process of law for a mere pretence and cover ; and that therefore he is liable in the same manner, and for the same damages, as he would have been, if he had done the same acts without the legal warrant he abused.

Where, however, the officer evidently means to do his duty, faithfully and properly, in pursuance of the authority given him by law, but commits some errors and mistakes, by which a debtor may sustain damage, the officer is not liable as a trespasser, though he may be liable in case, for the damage done by his errors and mistakes to the person, who sustains it.

Barrett
*vs.*
White e a.

Thus, where the defendants took a hog *damage feasant*, and afterwards converted the same to their own use, they were considered liable as trespassers *ab initio*. *Dye vs. Leatherdale*, 3 *Wils.* 20.

So trespass was adjudged to lie against a landlord, who on making a distress for rent, turned the family out of doors, and kept possession of the premises, on which he had impounded the distress. *Etherton vs. Popplewell*, 1 *East. Rep.* 138.

So where the defendant took a horse as an estray and afterwards worked him, he was considered as a trespasser *ab initio*. *Oxley vs. Watts*, 1 *Term Rep.* 12.

In these cases, the persons, who were adjudged trespassers, were not so adjudged for any errors or mistakes, which persons of common intelligence and care might commit, but for such a complete departure from the line of duty as to warrant the conclusion, that they intended from the first to commit wrong, and use their legal authority as a cover to their illegal conduct ; but where the facts proved warrant no such conclusion, the persons charged with them are not trespassers.

It has been settled, that an action of trespass cannot be maintained for taking an excessive distress. *Hutchins vs. Chambers*, 1 *Burr* 590.

It was also said by Chief Justice *Parsons*, in the case, *Purrington vs. Loring*, (7 *Mass. Rep.* 338) that if an officer, having seized goods by virtue of a warrant of distress, wantonly removes them to a great distance, before the sale, whereby the owner is injured, an action of the case may be maintained against him, but he is not for this a trespasser *ab initio*.

The taking an excessive distress, and the removal of goods taken by warrant of distress to a great distance, though wrongs, are not such acts as will warrant the conclusion, that the persons committing them intended from the beginning to abuse their authority, and therefore do not make the persons committing them trespassers *ab initio* : but it is said, that when six ounces of gold, and one hundred ounces of silver were taken for six shillings and eight pence, it was holden to be an excessive distress, for which the party was liable in

Barrett
*vs.*
White et a.

trespasss, because that appeared upon the face of it, and upon pleadings, to be excessive, and because it was a distress of gold and silver, which are of certain known value and even the measure of the value of other things.  1 *Burr*. 590.

Here could be no mistake—it must have been a wilful abuse of authority, and therefore the law supposes the party, committing it, intended it from the beginning.

The question for decision then is, whether the facts, in this case, shew the conduct of the defendants to be so outrageous as to raise a presumption, that they intended from the beginning to use the authority of law as a mere pretence for destroying the plaintiff's property ; or whether these facts discover such errors and mistakes only, as the law will presume men clothed with authority may commit, intending all the time to act in pursuance of such authority.

The facts as reported by the judge, who tried the cause, are,

1st.  "The officer went to the plaintiff's barn soon after "midnight and made the attachment."

It might be necessary to make the attachment in the night to secure the plaintiff's demand—if therefore the present plaintiff suffered damages by reason of the attachment being made in the night, it was his own misfortune, and not the fault of the officer.

2nd.  "The officer did not make any attempt to secure "the hay, &c. where found."

But it does not appear, that such attempts, if they had been made, would have been successful : probably the reason why they did not make the attempt was, because they knew, if made, it would prove fruitless ; at any rate, it was the right of the officer, who was answerable for the property, to judge, whether the hay would be secure in the plaintiff's barn or those of the neighbors ; and if he judged wrong, he is not on that account a trespasser.  If the plaintiff has suffered by such errors of judgment, he can, at most, recover such damages, as he has sustained in consequence of it, in an action on the case.

3rd.  "The officer did not give the plaintiff notice (at the "distance of 50 miles) that his property was attached be-"fore removal."

It is the duty of an officer having a writ of attachment, and to whom goods of the debtor are shown, to seize them, take them into his custody, and keep them under his controul, so that he may have them to answer any judgment, which the plaintiff in the suit may recover.

If the officer chooses to deliver them into the hands of a third person, on his receipt and promise to have them forthcoming, still the law considers the goods in the hands of the officer, and such third person is but his servant.

Unquestionably the officer ought to perform this duty openly and fairly, that a debtor, attentive to his affairs, may not be deprived by him of any opportunity, which his situation affords him to prevent expense, and the waste and destruction of hi sproperty. The law requires, in all cases, that its officers should conduct themselves with fairness and moderation.

Notice to a debtor in cases of attachment, before removing the property, seems not necessarily connected with any of these acts, which the law requires of an officer, when he attaches goods on mesne process. He may obey the precept of his writ, take the goods of the debtor into his custody, and keep them under his controul, without going out of his way, or incurring any expense by giving the debtor notice of what he has done.

There is certainly no statute making it the duty of the officer to give such notice to the debtor ; and if there has been any decision of this court to that effect, it is entirely unknown to me. Indeed, I am not aware, that the doctrine has the sanction of any decided case, or the dictum of any judge, for its support.

It cannot be pretended, that an officer is bound to give notice to the debtor in all cases, let the distance and circumstances be what they may. In what cases then is the officer bound to give this notice ? Within what distance must the defendant live to be entitled to it, and what must be the degree of injury, the property may sustain by removal ? If such notice is required of the officer, he must judge of these things ; and if he happens to err in opinion, is he to be subject-

ed to an action of trespass, and placed in no better situation than if he had proceeded without process ?

If the law makes this a part of the duty of officers, the practice hitherto has been altogether erroneous ; I may also venture to add, with much assurance, that no such opinion has ever been entertained by any member of the bar.

From these considerations, I am unable to bring myself to the belief, that any such duty is, by law, required of officers.

There is no question, that the law of this state, which authorises creditors (or those who pretend to be such) to attach the property of their supposed debtors, on mesne process, is exceedingly liable to abuse.   No doubt, debtors have suffered inconvenience from this law.

Perhaps it may be further admitted, that some limitation and restriction on the power of creditors, attaching on mesne process, would be an improvement of the law in this respect; but whether debtors would, in common cases, derive as much advantage from notice of the attachment to be given by the officer at their expense, while the goods are still kept under the care of watchmen, also at their expense, as would compensate for all such expense, is very questionable.   The question, however, before the court is, not what the law ought to be, but what it is.   It is the province of judicial courts *jus dicere, non jus dare.*

4th.  " The hay, &c. was removed in very unfavourable " weather."

It has before been attempted to be shewn, that an officer has a right to remove, for safe keeping, such property, when attached, and having this general right, any injudicious conduct, as to the manner and time of removal, cannot be considered such a total departure from the line of duty as to justify the imputation, that he seized the property originally, with that view, and subject him to the same damages, as if he had done the act without any colour or pretence of authority.

Suppose the law authorized a person taking a distress to use it moderately, and it should be used immoderately ; is it possible, that the person, thus using the distress, should be answerable for any further damages, than were occasioned by the excess ?

He was doing a lawful act, but he did it wantonly and care-lessly ; in such case there would, evidently, be wanting that entire departure from duty, which seems to attend all the cases where persons, by their subsequent unlawful acts, have been adjudged trespassers *ab initio.*

The law arising on the foregoing facts does not, in my view, entitle the plaintiff to the present action.

If the plaintiff has suffered injury from the irregularities and mistakes of the defendants in serving a lawful precept, he has his remedy by an action on the case ; but it would, in my opinion, be monstrous to say, that they are liable to the same extent, and for the same sum in damages, as they would have been, if they had done what is here charged without any authority whatever ; and inasmuch as this consequence must follow from a decision, that they are liable as trespassers, I am of opinion, that the defendants' motion ought to prevail.　2 *Wils. Rep.* 313, *Winterbourne vs. Morgan et a.*— 11 *East Rep.* 394.—11 *Johns. Rep.* 377, *Van Brent et a. vs. Schenck.*—1 *Chitt. Plead.* 172–173.—*Bull. N. P.* 81.—8 *Coke* 146, *Six Carpenters' case.*

RICHARDSON, C. J.　The first question to be settled in this case is, whether the articles mentioned in the declaration were, under the circumstances, liable to be attached upon mesne process : because, if they were not, it is very clear, these defendants are all trespassers.　This question is to be settled by a recurrence to the rules of the common law, in analogous cases, and to our own practice.　There is a close analogy between our attachments upon mesne process and a distress at common law, to compel an appearance or the performance of a duty ; and the decisions, which have settled what may be distrained, have been supposed to have a direct bearing upon the question, which we are now to consider.　Those decisions will therefore be in the first place examined.　And the result of such an examination cannot be expressed with more precision and perspicuity, than in the language of *Parsons,* C. J. in the case of *Bond vs. Ward,* 7 *Mass. R.* 129.　" At common law, all distresses, as well " those to compel an appearance, as to perform any other " duty, must, when the duty is performed, be restored in the

" same plight, in which they were taken. For this reason,
" goods could not be distrained, which in consequence of the
" distress could not be returned in the same plight, in which
" they were taken, as sheaves of corn, or hay in a barn, be-
" cause they would be injured ; as the grain of the sheaves
" would be shattered. But the sheaves or hay in a cart
" might be distrained in the cart, because, by removing them
" with the cart, no damage might happen to them."

This account of the antient law, on this point, is, in truth,
the fair sum of all the authorities relating to the subject.
*Coke Litt.* 47 *a. & b.*—*Comyn's Digest,* " *Distress,*" *B. & C.*
—1 *Rolle's Ab.* 666.—2 *Mod.* 61, *Wilson vs. Ducket.*

But in England, the common law was altered on this subject
by the statute of 2 *W. & M. cap.* 5, which enacted, that any
person having rent arrear, on a demise, might seize sheaves
or shocks of corn, or corn in the straw, or loose, or hay in a
barn, granary, or upon a hovel, stack, or rick, or otherwise,
upon any part of the land charged with such rent, and lock
up and detain the same in the place where found, so as such
corn be not removed to the prejudice of the owner. *Bacon's
Ab.* " *Distress,*" *D.* And what was done in England by stat-
ute, in this respect, in relation to distresses, has been done
here by immemorial usage, in relation to attachments upon
mesne process. For it is believed, that no man now living
can recollect the time, when it was not the practice to at-
tach upon mesne process hay in a barn. 11 *Mass. Rep.* 184,
*Campbell vs. Johnson.* Nor is it known, that any general in-
convenience has arisen from this practice. It being the in-
terest of both the debtor and the creditor, that property at-
tached should be preserved safely and not be wasted, some
arrangement has in general been made to prevent the dam-
age, which hay, and grain in the straw, must sustain by a re-
moval. Either some person has been found, in whose custo-
dy it could be left, or who was willing to become responsi-
ble for the delivery of it, when demanded ; or it has been in
some other way secured in the place where attached. It is
believed to have been very rare, that hay or grain in the
sheaf have been removed from a barn. And when it has

been, it was only when small quantities were attached. In this way creditors have been enabled to seize this sort of property to secure their debts, without any material injury to the debtor ; and on the whole, no doubt is entertained, that articles of this kind are subject to attachment on mesne process.

It may be useful to inquire in the next place, whether these defendants so conducted with the property attached, as to render themselves liable, in any form of action, for the damage it sustained. Because, if this question is to be answered in the negative, all further inquiry is unnecessary.

When an officer seizes goods upon mesne process, it is his duty to see them safely kept, in order that they may be had to satisfy the claims of the attaching creditor, if wanted : and if not needed for that purpose, that they may be duly restored to the debtor.    He ought, in the first place, to take care, that they are not left in such a situation as to mislead other creditors, and to be thus exposed to be lawfully seized on other process.   His duty to the creditor binds him to do this.    But this should be done with as little expense, and with as little injury to the property attached, as may be.    He is not to destroy the goods, in order to prevent a seizure by other officers ; nor is he to cause any unnecessary waste or expense for that purpose.  He is bound, by his duty both to the debtor and creditor, to be cautious and prudent in this respect.   In the discharge of his duties, on occasions of this kind, he must be allowed the exercise of some discretion, and is not to be made liable for every trivial mistake in judgment, he may make in doubtful cases.  But the discretion allowed him must be a sound discretion, exercised with perfect good faith, and with an intent to subserve the interests of both the debtor and the creditor.  There are cases, without doubt, in which hay attached in a barn may and ought to be removed.   But, as it is well known, that this cannot be done without considerable waste and some damage to the article, reasonable diligence should be used by the officer to prevent it, if practicable.    There are many ways, in which the waste incident to a removal in these cases may be avoided. It may sometimes be done by the debtor's paying the claim

of the creditor, or by procuring some person to become surety for the payment. With the assent of the debtor, the hay may be locked up in the barn, or may be left in the care and custody of some person in the neighbourhood. In many cases, indi iduals may be found willing to become responsible for the delivery of the goods attached upon demand. It is believed, that, in practice, it has rarely been found necessary to remove hay, when attached. Some arrangement has in general been readily made to prevent a removal. Most assuredly, there are ways and methods enough, in which a removal may be avoided, to render it fit and proper, that the officer should give the debtor an opportunity to avail himself of them, if he see fit. In cases where very great waste must be made by a removal, it can hardly admit a doubt, that it is the duty of the officer to give the debtor notice of the attachment, before he proceeds to make the removal. Indeed, the officer should demean himself, as every prudent man would under like circumstances. If the waste and injury of a removal can be avoided by ordinary diligence, it is to be avoided. When no way of securing the property in the place where attached is found practicable, then, and not till then, it is to be removed.

Now let the conduct of the officer, in the case under consideration, be tested by these rules and principles. A very large quantity of hay, and of grain in the straw, was attached. The seizure was made a little after midnight, when the weather was such as to render it a very unfavourable time to remove the property. The debtor resided about fifty miles from the place, where the attachment was made. What ought under these circumstances to have been done ? The first thing, which one would suppose must have struck the mind of a man of common prudence in such a case, would have been the propriety of waiting for the return of favourable weather, or at least for the return of open day light, before any attempt was made to remove the property. But in this case, these circumstances were whol y disregarded ; and the removal commenced in the night, in defiance of the wind and the weather.

As the quantity of hay and grain was very considerable, it must have been very obvious to every mind, that much expence and trouble, as well as waste of the property, might be saved by securing the property in the barn, where it was seized. And it is not a little surprizing, that it should not have occurred to the officer on that occasion, that it was proper to consult the debtor, or his tenant, as to the practicability of thus securing the property. But the operations of these defendants seem not to have been delayed a moment by a thought of this kind.

There is another view of this subject, which must not be disregarded. The debtor, in this instance, seems to have had in his possession a considerable amount of property, while the claims of the attaching creditors did not amount to a very large sum. In such a case, the propriety of delaying the removal of a large quantity of goods extremely liable to be injured by removal, until the debtor could have notice, and thus have an opportunity to prevent the waste and loss, which a removal must occasion, by adjusting the claims of the attaching creditors in some way, must have been very obvious. This could not have caused a delay of more than two or three days, during which the property might have been kept with perfect safety, for a very trivial expense. Yet this view of the subject, obvious as it seems to be, had no influence upon the course of these defendants.

The goods attached were removed without any delay. The consequence was just what was to have been expected. There was a great waste of the property. The jury have assessed the actual damage at $60, when if we rightly recollect the whole amount of the debts, to secure which the attachment was made, was under $200.

For myself I must confess, that, when I consider the time and the weather, when the removal of the property took place, and the very great haste, with which it was done, I am wholly at a loss to conjecture any fair motive, which could have impelled the defendants to pursue the course they adopted. Their motives are however immaterial in this case. But whatever may have been their views, their conduct was, in my judgment, extremely improper, and was

such an abuse of the process of the law, as must render them liable for the damages, which the plaintiff has sustained.

In the case of *Daniel Rice vs. William Proctor*, to which *Parsons, C J* alludes in his opinion in the case of *Bond vs. Ward*, (7 *Mass. Rep.* 430,) the facts were as follows. *Proctor* had given to *Rice* a lease of a farm for a year, at a certain rent, and apprehending, that *Rice* was in failing circumstances, brought his action for the rent before the expiration of the year, and attached a quantity of hay, which *Rice* had put into the barn upon the farm. The action, thus commenced, was tried in the court of common pleas in *Middlesex*, December term, 1807, and *Proctor* failed in his suit, having in the opinion of the court commenced it prematurely, and before the rent was due. The attachment being thus dissolved, *Rice* had his hay again. But being an inn-keeper, and having sustained damage by the temporary loss of his hay, he brought an action of trover against *Proctor*, to recover the damage he had sustained. This cause was tried in *Middlesex*, at April term, 1809, and a verdict returned for the plaintiff ; upon which the court, after having the case for some time under consideration, afterwards rendered judgment. If, upon the facts in that case, *Rice* was legally entitled to maintain an action, it would have been matter of no little surprize, had it been found, that this plaintiff, upon the facts here stated, was entitled to no redress.

But one further question remains to be examined. Have these defendants so conducted as to render themselves trespassers *ab initio ?* For as the seizure of the goods was lawful, if they have not so conducted, this action cannot be maintained.

The general rule is, that he, who at first acts with propriety under an authority or license given by law, and afterwards abuses it, shall be considered as a trespasser from the beginning. 8 *Coke* 290, *the Six Carpenters' case.*—1 *Chit. Pl.* 172, *Perkins sec.* 190.—*Com. Dig.* " *Trespass*" C. 2, & " *Distress*" D. 6.

The reason of this rule seems to be, that it would be contrary to sound publick policy to permit a man to justify him-

self at all under a license, or authority allowed him by law, after he had abused the license or authority thus allowed him, and used it for improper purposes. The presumption of law is, that he, who thus abuses such an authority, assumed the exercise of it, in the first place, for the purpose of abusing it. The abuse is therefore very justly held to be a forfeiture of all the protection, which the law would otherwise give.

The nature and extent of the rule will be best understood by an examination of the particular cases, in which it has been applied.

If a man enter into a tavern to drink, and after drinking carry away the cup against the will of the taverner, he shall be punished for his first entry ; for it cannot be intended, that his entry was with any other intent than to take the cup, for the law cannot judge his intent against his act. *Perkins, sec.* 191.

In trespass for taking and cutting the plaintiff's nets and oars, the defendant pleaded in bar, that he had a several fishery, and that the plaintiff endeavoured with the oars to row upon the water, and with the nets to take his fish, and that, for the safeguard of his fishing, he took and cut the nets and oars. To this plea the plaintiff demurred ; and the plea was held to be bad ; because, although the defendant might have seized and detained the nets and oars, as damage feasant, yet the cutting was unlawful and made him a trespasser. *Croke Charles* 228, *Reynell vs. Champernoon.*

In trespass for taking and carrying away a horse, the defendant pleaded, that he took and detained the horse as an estray. The plaintiff replied, that the defendant laboured the horse, riding upon him and drawing with him. To which replication the defendant demurred. The court held, that the defendant was punishable for the abuse as a trespasser *ab initio. Croke James* 147, *Bagshawe vs. Goward.* — *Yelv.* 96, *S. C.* — 1 *D. & E.* 12, *Oxley vs. Watts,* S. P. — 3 *Wilson* 20.

So it has been held, that if a lessor enter to see if waste has been done upon the land leased, and remain all night upon the land without the assent of the lessee, he becomes a trespasser *ab initio.* 2 *Rolle's Ab.* 561.

And the tanning of raw hides, seized as a distress, has been held to make him, who seized them, a trespasser ; because they are so changed by the operation as not to be known by the owner. *Cro. Eliz.* 783, *Duncomb vs. Reeve et a.*—2 *Rolle's Ab.* 561.

If an officer, who has entered a house and there attached goods, keep the goods in the house for a long and unreasonable time without removing them to a place for safe custody, he becomes a trespasser *ab initio.* 2 *Bl. R.* 1218, *Read vs. Harrison.*—2 *Strange* 716, *Griffin vs. Scott.*—11 *East.* 394. & 11 *East.* 404, *note.*

In *Gibson's* case, (2 *Rolle's Ab.* 561,) it was decided, that if a searcher seize certain stuffs and unpack them, and place them in the dirt by which they are injured, although the search was lawful, yet the placing the goods in the dirt was such an abuse of his authority as to render him a trespasser *ab initio.*

Where an officer, who was authorized by a statute of the United States to seize and sell goods as a distress for taxes, seized goods and sold them immediately at auction, without giving any notice of the time and place of sale, he was held to be a trespasser *ab initio.* 1 *N. H. Rep.* 41, *Blake vs. Johnson.*

So in *Sackrider vs. McDonald,* (10 *Johnson* 253,)it was decided, that if a distrainer of cattle, damage feasant, impound them without having the damage ascertained, as required by the law of the place, it was unlawful, and made the party, impounding the cattle, a trespasser *ab initio.* 2 *John.* 191, *Pratt vs. Petrie.*

In some cases, a public officer may forfeit the protection of the authority, under which he acts, by an abuse, which consists in mere non feasance, as is the case when a sheriff, who has made an arrest or a seizure of goods by virtue of mesne process, neglects to return the process. In such a case he will not be permitted to justify the arrest or seizure under it. 1 *Chitty's Pl.* 186—*Com Dig. "Retorn" F.* 1.—5 *Coke* 90, *Hoe's* case. 2 *Rolle's Ab.* 563.

In the case of *Purrington vs. Loring,* (7 *Mass. R.* 388.) *Parsons,* C. J. seems to intimate an opinion, that if the act of a

public officer be in itself lawful, he cannot be made a trespasser *ab initio*, by shewing, that the act was done in an improper manner. But that opinion was altogether extra judicial. The point did not arise in the case, and the decision was placed upon other grounds. And in the case of *Phillips vs. Bacon*, (9 *East* 303,) Lord *Ellenborough*, after hearing an argument upon the point, declared, that he was strongly inclined to a contrary opinion.

On the whole, it is believed, that an attentive examination of all the authorities will clearly shew, that a man may become a trespasser *ab initio* not only by using an authority, which the law gives him, for improper purposes, or by pushing the exercise of it beyond its due limits, but by exercising it in an improper and illegal manner to the prejudice of another. There are, therefore, two grounds in this case, on either of which, in my judgment, these defendants may be considered as trespassers.

In the first place, the hay and grain were moved without any necessity, which can justify the removal. The damage and waste, incident to such removal, must therefore be considered as wantonly caused by the defendants. And this wanton and illegal use of process is a forfeiture of the protection, which it would otherwise afford.

And in the next place, had there been a necessity to remove the goods attached, the doing of it at an unfit and unreasonable time, when it must inevitably be exposed to great and unnecessary waste and destruction, would have been such an abuse as to render all concerned in it trespassers.

HARRIS, J., concurring in the opinion delivered by the C. J., judgment was rendered for the plaintiff upon the verdict.