## RAND *v.* DODGE.

If a demandant claim by possession under claim of title, he may trace that title back as far as he is able, although he fail to establish seizin in the remotest party from whom he derives it.

Possession is *primâ facie* evidence of title in fee simple, whether such possession be held by the party in person who claims the title, or through an agent, or tenant, or one having his license to enter upon the land.

The written or spoken admission or declaration made by one in possession of land, and since deceased, that he held that possession in subordination to a certain title, is evidence of seizin in favor of one holding that title in an action against a third person.

Entries in the account books of such deceased person, letters written by him, the bodies of receipts written by him for the purpose of being signed by others, whether the signatures of those others be proved or not, are all evidence to show the character of the possession, if they contain words that are equivalent to such declarations or admissions, or in any way indicate that he occupied under such title.

Entries in the books of a deceased person, made by him, admitting or declaring facts at the time against his interest, such, for example, as charge him with sums of money in favor of other parties, are, upon the ground of their being against his interest, admissible in actions between other parties.

It is the same if these entries are made by his clerks under his direct instructions, or if ratified by his subsequent act, settling the accounts in which they occur.

An entry made by an agent in the ordinary course of his duties as such, is evidence between third parties to identify a paper, the agent having deceased.

Where evidence of possession is the entry of an agent through persons with whom he agrees in writing to work upon the land, that writing need not be proved by a subscribing witness.

The caption of a deposition should describe the court in which the action is pending; should name the house or office where the deposition is taken, and should show that the oath prescribed by law was administered, and whether the opposite party, who was not present, objected or not. But it may be amended after verdict, if it contain sufficient to amend by.

The admission of immaterial evidence does not necessarily require that the verdict should be set aside.

---

Rand *v.* Dodge.

---

A tenant is not entitled to betterments, if he has entered without claim of title, and without purchasing the land.

A deposition notified to be taken on Monday, the 26th day of March, is well taken on the 26th of March, not being on Monday.

It is no sufficient objection to the use of a deposition on trial that the party taking it refuse, before court, to exhibit it to opposite counsel.

WRIT OF ENTRY, to recover lot No. 20 in the third range of lots lying east of the Ammonoosuc river, in Bath.

The tenant pleaded *nul disseizin*, and made also a claim for betterments.

The demandant offered in evidence a copy of the will of Jesse Johnson, dated on the 20th day of January, 1800, and proved on the 24th day of March, 1800, by which the testator authorized his executors, John Johnson and Haynes Johnson, to sell and dispose of any of his outlands, not otherwise disposed of, lying in Enfield, Bath, &c.; and he gave one third of the residue of his estate, after the payment of debts and legacies, to Jesse and John Johnson, and two thirds to Haynes and Benjamin Johnson.

The demandant then offered in evidence a copy of a deed from John Johnson and Haynes Johnson, the executors, to Oliver and Elias Gallup, dated and acknowledged on the first day of April, 1806, and recorded on the fourth day of April, 1806, conveying the interest of the testator in and to two hundred and ninety-five acres of land, being lots numbered 20 and 21, lying east of the Ammonoosuc river.

To the copies of the will and the deed the tenant objected, but they were admitted by the court. The demandant then offered a copy of a deed from Oliver and Elias Gallup to John R. Watkinson, dated and acknowledged on the 3d day of February, 1809, and recorded on the 18th day of April, 1809, by which the grantors conveyed in fee with warranty, the lots No. 20 and 21, before mentioned, and a deed from John R. Watkinson to Daniel

Rand, dated and acknowledged on the 28th day of February, 1823, and recorded on the 11th day of May, 1824, by which the grantor released and quitclaimed one half of his interest in the lots No. 20 and 21. To prove the execution of this deed the demandant offered the deposition of William H. Russell. To the caption of this deposition the tenant excepted, because —

1. It did not state the time and place of caption. It omitted to designate the office at which it was taken.

2. It did not describe the court where it was to be used, but omitted to mention the district.

3. It did not state whether the tenant objected, but only that he did not attend.

4. The oath was not administered in the form prescribed by the statute, but that the deposition contained " the whole truth and nothing but the truth."

But the court overruled the exceptions and admitted the deposition.

The demandant contended that from the time of the conveyance from the Gallups to Watkinson, in the month of February, 1809, Daniel Rand was jointly interested with Watkinson in the land thus conveyed. To prove this interest he offered the deposition of Richard Rand. To the caption of this deposition the tenant excepted, because he was notified to attend the taking of the deposition on Monday, the 26th day of March, whereas the 26th day of March did not fall upon Monday ; but the court overruled the exception. The counsel for the tenant then objected to the reading of the deposition, because, before this term of the court, he requested the counsel of the demandant, after the deposition had been opened, to permit him to see the deposition, but such permission was refused. The court overruled the objection and permitted certain portions of the deposition to be read. The witness deposed that in the month of January, 1809, he came to New-Hampshire in company with Watkinson

and Daniel Rand; that he stopped at Charlestown, while they went on farther north, and on their return they said they had made a joint purchase of lands in Bath and Ryegate. These declarations were subsequent to the date of the deed from the Gallups to Watkinson. The tenant excepted to their competency.

It was in evidence that Daniel Rand and Robert Rand were partners, under the style of R. & D. Rand; that Daniel Rand died in June, 1836, leaving no widow, and intestate, and that Philip C. Rand was his sole heir at law; that Philip C. Rand died in June, 1842, having, before his death, caused this suit to be commenced, and that Robert Rand was appointed administrator of his estate.

The demandant contended that Hamlin Rand, who died in the month of August, 1836, entered upon and took possession of the demanded premises as the agent of Watkinson and Daniel Rand, and exercised various acts of ownership upon the land, as such agent, at various times, from the year 1814 to the time of his death. He proved, by Ezra Goodwin, that in the year 1814 he was employed by Hamlin Rand to get one hundred thousand feet of timber from the two lots, 20 and 21, and that most of it was cut from lot No. 20 and drawn to Hamlin Rand's saw-mill on the Ammonoosuc river. He made a written agreement with Hamlin Rand to do this, which agreement was annexed to Goodwin's deposition. This agreement was dated in the month of January, 1814, and was attested by a subscribing witness. The tenant excepted to its admission because the subscribing witness was not produced, nor his absence accounted for; but the exception was overruled and the agreement admitted. Upon this point Ezra Sanborn testified that about twenty-five or thirty years ago he saw the Goodwins and others cutting timber on the lots, but he could not say on which lot, and

did not then know that they were on either of the lots, although he has since ascertained that the place where he thus saw them was on one of the lots. To this evidence the tenant excepted.

The demandant also introduced John McDuffie, who testified that in the months of December, 1818, and January, 1819, he was employed by Hamlin Rand to survey, and did survey, the lots 20 and 21; that he made out his bill for his services for ten dollars against Hamlin Rand & Co., and that Hamlin Rand paid the bill; that Hamlin Rand was present and upon the land during the survey; that throughout the whole transaction, before he went upon the ground, and while he was upon it, and when he made out his bill, Rand told him that he wished him to survey the land for himself (Rand) and others; that when Rand first employed him he said it was for himself and others, and he so understood him all the time; and that he had an impression, while Rand was upon the land, that Rand expressed a desire to write to and inform his partners if any body else claimed the land. To this evidence the tenant objected, but it was admitted by the court.

The demandant also produced certain books as the account books of Hamlin Rand, and contended that certain entries therein made against the interest of Hamlin Rand, and in the ordinary course of business, were competent evidence to prove that all the acts done by him in relation to the lots 20 and 21 were performed by him as agent of Daniel and Robert Rand and Watkinson, and not on his own account.

On these books were the following credits to Watkinson and Rand, to the admission of which the tenant first objected, because the contract made by Goodwin, about drawing the timber, was with Rand alone; but the court overruled the objection.

Rand v. Dodge.

| | | | | |
|---|---|---|---|---|
| 1820. | 19 May. Watkinson & Rand, | | Cr. | |

By proceeds of 102,113 feet board timber off Bath land, drawn by E. & R. Goodwin, 22 March, 1814, $76.58

Also 82,201 feet board timber, hauled by Johnson and Dodge, $66.95

1818. March 21. Watkinson & Rand, Cr.
By 179,317 feet board timber from Bath land, $179.31.

1818. Sept. 18. Do. Cr.
By timber from Bath land, $8.24

On the books there was also a charge to Watkinson & Rand, dated January 1, 1819, of ten dollars cash, paid John McDuffie for his bill.

The tenant further objected that the credits and the charge, above mentioned, were incompetent evidence in themselves, and also because they were in the hand-writing of one Sprague, the clerk of Hamlin Rand, who, it appeared, now resided at Buffalo, and who was not produced. But it also appeared that certain charges were made upon the books, in the hand-writing of Hamlin Rand, bearing date in the year 1825, one of $61.60½ against Watkinson & Rand, and one of $211.60½ against Watkinson & Rand, and which, as the demandant contended, showed that the credits, which had been previously made by Sprague, were assented to by Rand, and the entries were admitted by the court.

The witness who proved the books and testified as to the above entries, was James Allen. Upon his cross-examination he was inquired of by the counsel for the tenant as to his interest in this suit. He testified that in behalf of the demandant he requested Mr. Livermore to commence this suit, and was instructed by the demandant to make all necessary preparations for trial; that he had summoned one witness, had paid him from his own funds, and had also left money of his own with a Mr. Story,

Rand *v.* Dodge.

of Coventry, to pay for taking certain depositions; that in all he did he acted as the agent and in behalf of the demandant, and not on his own account; that he had in his hands money belonging to the estate of Philip C. Rand, and thought the accounts between himself and the estate were about even, and that he also had money belonging to Robert Rand in his hands. The counsel for the tenant thereupon contended that the witness was interested, and took an exception to his competency; but the court overruled the exception.

There appeared, also, upon the books an entry of credit to Watkinson & Rand, which Samuel R. Cornwell, a witness for the demandant, testified was made by himself while in the employ of Hamlin Rand. The entry was in these words: " Discount with Lyman & Rand, to balance, $55.58." The books were kept by double entry, and Cornwell testified that he was acquainted with that method of keeping books, and that according to that method this entry meant that Lyman & Rand had paid Hamlin Rand the charge of $55.58 which was due him from Watkinson & Rand, and that Hamlin Rand directed him to make the above entry, and that he had no other knowledge that the balance was settled by Lyman & Rand except from the direction thus given him by Hamlin Rand. The court permitted the entry to be read, and the counsel for the tenant excepted.

There was also a credit to Joseph Dodge, under date of the 12th of April, 1819, of $4.50, for his services for four and a half days surveying with John McDuffie, and a charge of the same amount against Watkinson & Rand, which the court permitted to be read, and the counsel for the tenant excepted.

The demandant also produced a paper containing Hamlin Rand's account with Rand & Lyman, underneath which was a letter in the hand-writing of Hamlin Rand to William Lyman, dated on the 22d of May, 1835, in

which he says, "I forward you my account with Rand & Lyman."

The account contained a credit of cash $100, from White & Potter, for the purchase money for lot No. 21, and also contained a charge of $55.58 to Rand & Lyman, being the sum credited to Watkinson & Rand, as before mentioned. To this evidence the counsel for the tenant objected, but it was admitted.

The two following charges appeared upon the books against Watkinson & Rand :

1819. February 2. Paid cash for taxes on Bath lands, $4.49
1819. November 11. Cash paid for taxes, D.
Bailey's receipt, $3.79
to which the tenant objected, but they were admitted.

The demandant also produced certain receipts ; one dated Bath, May 29, 1818, signed " D. Bailey, Jr., Collector," and purporting that he had received of Hamlin Rand $4.49, for taxes on lots No. 20 and 21, in the third range of 100 acre lots, east of the Ammonoosuc, and another dated Bath, August 30, 1817, signed, " Timo. Barron, Collector," purporting that he had received of Hamlin Rand, for J. R. Watkinson, $4.67, being for the tax for 1817 on lots Nos. 20 and 21, in the third range. A witness testified that the signatures were in the hand-writing of Bailey and Barron respectively, and another witness testified that Barron was dead, and that Bailey had been absent for twenty years at the West; that he had heard nothing of him for twenty years; that about twenty years ago he had seen him at Stillwater, New-York, and since then had heard that he had gone farther west; but that he had heard nothing of him for seven years.

The demandant also produced a copy from the records of the town of Bath, showing that Barron was chosen collector on the 11th of March, 1817, and that Bailey was chosen collector on the 10th of March, 1818, and upon the

Rand *v.* Dodge.

9th of March, 1819. The counsel for the tenant objected to the admission of the receipts, but the objection was overruled.

It appeared that all the receipts for taxes were in the hand-writing of Hamlin Rand, excepting the signatures, and were found among his papers after his decease.

The demandant also produced two other receipts, proved to be signed by D. Bailey, Jr., one dated on the 12th of November, 1819, purporting that he had received of J. R. Watkinson, by H. Rand, $3.79, in full for taxes for 1819; and one dated June 2, 1821, purporting that he had received of Hamlin Rand $4.05 for taxes assessed to J. R. Watkinson for lands in Bath in 1820. To these receipts the defendant objected, but they were admitted.

The demandant also produced a receipt, proved to be signed by Jeremiah Carleton, dated on the 24th of February, 1821, purporting that he had received of Hamlin Rand $3.51 for taxes assessed to John R. Watkinson in 1821, and signed "Jeremiah Carleton, collector of taxes for the town of Bath." It appeared that Carleton had removed to the State of Michigan, and had been heard of within two years.

It appeared from the records of Bath that Jeremiah Carleton and D. Bailey, Jr., were collectors of taxes for the years for which they gave receipts for taxes. The defendant objected to this receipt, but it was admitted.

The demandant also produced a paper filed on the back, in the hand-writing of Hamlin Rand, "Logs drawn by E. & R. Goodwin, 1814," and purporting to be a survey-bill of timber, amounting to 102,113 feet. The figures showing the number of feet in each stick of timber were proved to be in the hand-writing of Hamlin Rand. Levi W. Cobleigh testified that in the years 1813 and 1814 he tended Rand's mill, and that Goodwin drew there over 100,000 feet of timber. To the admission of the paper the tenant objected, but it was admitted.

Rand v. Dodge.

The tenant claimed title to the land by adverse posses-
sion for at least twenty years prior to the commencement
of the suit. Upon this part of the case William Rand
was a witness for the demandant. He was examined by
the counsel for the tenant, as to his interest in the suit.
He testified that he had no interest; that he did not
remember whether or not he had signed the administra-
tion bond of Robert Rand, the plaintiff in this suit; if
such a bond required more than one surety; he thought
that he might have signed it as surety, or attested to it as
witness, but that he did not remember whether he did or
not; that he called upon a witness to see if he would
attend the trial for the demandant, and told him that
Allen or Livermore would undoubtedly pay him, but that
the witness told him he would not attend, although he
had attended at this term. The tenant objected to him
as interested, but the court overruled the objection, and
permitted him to testify.

The demandant also introduced James Allen, who tes-
tified that since the commencement of this suit he called
upon the tenant in order to ascertain what he would say
about the case; that the tenant was very cautious in his
answers; that the tenant's wife was present during the con-
versation, and said in the presence of her husband that they
went upon the land by the permission of Hamlin Rand,
and that Rand had been very kind to them in permitting
them to remain there so long; and that the tenant made
no objection to or denial of these statements by his wife.
To this evidence the tenant objected, but it was admitted
by the court.

The jury returned a verdict for the demandant for one
half of lot number 20; and, by agreement of the par-
ties and direction of the court, they returned also the
value of the improvements made upon the land by the
tenant; and the court reserved the question for the con-
sideration of this court, whether, upon the evidence, the

Rand *v.* Dodge.

tenant was entitled to any allowance for betterments. The tenant proved that he had declared, about twenty years ago, that this was a lot to which no one had a legal title, and that he had moved upon it to make himself a home; that Rand pretended to have a claim to it, but that he did not think Rand or any one else had any legal title to it. He also proved that he had declared that he had found a lot to which no one had a better title than he had; that he had got upon it, and meant to stay till some one appeared with a better title. The tenant did not enter under color of title, and did not allege that he had any other title than by possession.

The tenant moved to set aside the verdict, and for a new trial, on account of the rulings of the court, as aforesaid.

*Bellows & Livermore*, for the demandant, cited *Livingston* v. *Pa. Iron Co.*, 9 Wend. 511; Adams on Eject. 53, note; *State* v. *Norris*, 9 N. H. Rep. 96; *Scoby* v. *Blanchard*, 3 N. H. Rep. 170; Greenl. Ev. 182; 2 Cow. Phil. 650, 651; *Page* v. *Page*, 8 N. H. Rep. 187; *Harman* v. *Pettit*, 5 B. & Ad. 123; *Doe* v. *Williams*, Cowp. 621; 1 Stark. Ev. 260; *McFadden* v. *Kingsbury*, 11 Wend. 667; *Southwick* v. *Stevens*, 10 Johns. 443; *Tucker* v. *Welch*, 17 Mass. 165; *Lund* v. *Parker*, 3 N. H. 49; *Brown* v. *Stone*, 4 Vt. 42; *Jackson* v. *Frost*, 5 Cow. 546.

*Wilcox*, with whom was *Hibbard*, for the tenant, cited 2 Cow. Phill. 1312; 3 Johns. 292; 4 N. H. Rep. 377; Holt's N. P. 399; 3 Wend. 397; 5 B. & C. 935; 6 Cow. 164.

GILCHRIST, J. This action was commenced by Philip C. Rand, who afterward deceased, and it is now prosecuted by Robert Rand, who is his administrator. The deceased claimed, as the heir of Daniel Rand, who died in

1836, having derived his title from John R. Watkinson, who conveyed to him, in 1823, one undivided half of the land described in the declaration. The entire tract was conveyed to Watkinson in 1809 by the Gallups. A deed was produced from the Johnsons, claiming under the will of their father, to the Gallups, and the will of the elder Johnson was also proved by a register's copy. As no possession earlier than that of Watkinson was proved, the two conveyances last named were unnecessary as to establishing the title of the demandant, which is founded on possession only.

Exception was taken to the introduction of the will and the deed referred to; but however irrelevant they proved to be to the issue — since the demandant failed to connect himself, through them, with the ordinary source of title, or to prove a seizin in any of the parties from whom those conveyances proceeded — the proof of them appears to have been well enough, as showing that the title that he claimed was not of recent origin, and because he had an undoubted right to take the first necessary steps, and to proceed as far as he was able, in tracing his title to the public grant. It does not appear that any unfair results were obtained by him in so doing, or that the jury were directed to consider the evidence as being any thing but a failure on his part to accomplish the end toward which it tended.

Before entering upon the principal points that have been made in the case, it may be proper to dispose of some exceptions that have been taken to some depositions that have been used. One of these is the deposition of Richard Rand, the taking of which was notified to be on Monday, the 26th day of March. The deposition was taken on the 26th day of March, but that day was not Monday. The day of the month is certain. The day of the week is merely unnecessary description, and may be rejected.

Rand *v.* Dodge.

It was the duty of the demandant's counsel to exhibit, on request, the depositions he intended to use. If he declined, a rule could have been taken to file them. But his refusal to exhibit them, before such a rule, could not preclude their use on the trial.

The other deposition is that of William H. Russell. The caption did not state with sufficient accuracy the place where the deposition was taken. It appeared to have been taken in the city of New-Haven, and the caption refers to the notice annexed to it in such a manner as to render it probable that it was taken at the office named in the notice. But this does not appear in the caption with sufficient certainty. The oath administered appears to have been to tell the whole truth and nothing but the truth. The administering the oath in that form would admit of the magistrate's certifying that the witness swore in the form required by the statute — the import of both forms appearing to be the same. But the magistrate has not so certified, and the caption is, in that respect also defective. It appears by the caption that the defendant was not present; and it might be perhaps a fair inference that he did not object. But such an inference is not a necessary one, and the statute requires the certificate of the magistrate to this point. It is therefore defective in this respect also. The court in which the action is alleged to be pending, and in which the deposition is taken to be used, is described at the court of common pleas, to be holden at Haverhill, in and for the county of Grafton, &c. This is not such a misdescription of the court, perhaps, as could possibly mislead one, but does not describe it with perfect accuracy — it being holden rather for the western judicial district than for the county.

But the caption is in all these particulars capable of being amended, and contains something to amend by. 10 N. H. Rep. 291, *Whittier* v. *Varney* ; 9 N. H. Rep. 168, *Gibson* v. *Bailey.*

Rand v. Dodge.

The principal questions and difficulties in the case are those which have attended the introduction of evidence to prove the possession of the ancestors of the demandant, and the possession of parties from whom they derive their title. Personally, no one of them is proved ever to have been upon the land, and all the acts of ownership on which reliance has been placed have been the acts of Hamlin Rand, who was the agent of the successive owner's of the demandant's title, from the year 1814 to his decease, in 1836, or of his servants or others deriving authority directly from him, to perform the acts which have been set up in evidence of the demandant's possession.

Hamlin Rand appears but once to have been upon the land in person. This was in 1819, and his acts upon that occasion were of the highest character, as indicating possession and a claim of right. He entered upon that occasion with his servants and assistants, for the purpose of making a survey and plan of the lot, and of an adjoining lot claimed under the same title, and of setting up and marking the boundaries by suitable monuments. The land was at that time, as it would seem, unoccupied by any inhabitant.

An earlier act of a similar kind, and equally decisive as one of possession, and indicative of seizin and ownership, was performed in 1814 through the agency of the Goodwins, who, under a contract with Hamlin Rand, which was in evidence, entered upon the two lots, and cut and delivered at Rand's mill, one hundred thousand feet of pine timber.

To prove the last named entry to have been made under the direction of Hamlin Rand, and to prove these two entries to have been made by him in subordination to the demandant's title, and for the use and benefit of the parties who at those several times held that title, most of the evidence was cumulated, which has formed the subject of the numerous exceptions which are presented in the case.

Rand *v.* Dodge.

One of these exceptions relates to the evidence which was admitted to prove the written contract under which the Goodwins entered, and cut, carried away and delivered to Hamlin Rand the one hundred thousand feet of timber that grew upon the two lots. The paper bore the name of the subscribing witness, who was not produced, nor was his absence accounted for by the evidence. It is a matter of very obvious remark, that the proof of the execution of that paper was in no way connected with the demandant's title. He claims nothing under the contract. He does not require to know or to prove its terms, or whether it was fulfilled and kept by the several parties to it. The question was, whether the entry made by the Goodwins to cut and carry away the timber was made either at the request or under the direction of Hamlin Rand. That rule of law which requires a contract attested by a witness, to be in general proved by his testimony, is designed for the safety of the parties to the contract. In executing the paper it is in most instances optional with them to require the attestation of a witness, or to dispense with it; but when they choose that the paper shall be so attested, and in those cases in which the law, from a general policy demanding the safeguard of such solemnity in a certain class of cases, requires it for them, no party to that contract, nor any privy, can claim under it, or use it to rebut the claim of the other, without proving it by such witness. Such is the general rule. The reasons are variously stated. 1 Greenl. Ev., sec. 569. But when one, not a party or privy to the contract, nor claiming any benefit or exemption from the fulfillment of its exigencies, or the violation of its terms, has occasion, for a collateral purpose, to show that such a contract existed, and that its effect was to establish certain relations between the parties to it, and to qualify the acts of one or both of them, otherwise of a doubtful or opposite character and import; when the existence of the writing is of

---

---

no consequence or significance, but as part of the *res ges-*
*tæ*, which a stranger seeks to prove and to characterize
with reference to his own rights, then the reason of the
rule entirely fails, and the rule itself has no application.
This is shown in that class of cases in which parties have
been permitted, for collateral purposes, to prove acts done
in writing, without producing the papers themselves, or
accounting for their absence. Numerous cases on this
head are cited in 3 Cow. and Hill's Phill. 1209 ; *McFad-*
*den* v. *Kingsbury*, 11 Wend. 667 ; *Foster* v. *Trull*, 12 Johns.
456 ; *Tucker* v. *Welch*, 17 Mass. 165.

It is not as a contract that the paper is or can be availa-
ble to the demandant. It is only as evidence of the rela-
tion of master and servant, or principal and agent, and as
denoting the character and purposes of the acts of the
parties established by other proofs, that the paper has any
bearing upon the questions at issue.

We are satisfied that upon this ground it was properly
admitted, independently of another, urged in the argu-
ment, derived from the antiquity of the paper itself.
Greenl. Ev., sec. 580 ; Phil. Ev. 349 ; *Chelsea Water W.*
v. *Cowper*, 1 Esp. N. P. 275.

To prove that the entries by Hamlin Rand and his ser-
vants, or others acting under him, were in subordination
to the demandant's title, various declarations, letters, and
private entries of Hamlin Rand, were introduced, and ex-
ception taken, upon the ground that these were merely
*inter alios actæ*, and that the defendant was a stranger to
them. All these acts, whether written or spoken, were
performed during the period in which there was evidence
of his possession of the premises, and are introduced for
the sole purpose of indicating the character of that pos-
session, and to show it to have been under the plaintiff's
title.

The competency of the declarations of a party in pos-
session, that he holds under another, for the purpose of

establishing the seizin of that other, came in question in the case of *Unde* v. *Watson*, 4 Taunt. 16. The plaintiff proposed to inquire of a witness whether a deceased occupant of the houses in controversy had said of whom he rented them ; and it was held that the language which that occupant used while in possession was competent. "Possession," said *Mansfield*, C. J., "is *primâ facie* evidence of seizin in fee-simple. The declaration of the possessor that he is tenant to another, makes most strongly therefore against his own interest, and consequently is admissible." This case is often referred to. In *Cram* v. *Nicoll*, 1 Bing. N.C. 430. *Tindall*, C. J., says : " The expressions in question, which fell from a person in possession, and so as to cut down his own title, are clearly admissible." Nearly the same words were used by *Lyndhurst*, C. B., in *Chambers* v. *Bernasconi*, 1 Cromp. & Jervis 457, although the precise point was not presented by the case ; and in Greenl. Ev., sec. 109, it is said to be well settled that declarations in disparagement of the title of the declarant are admissible as original evidence.

Now it is quite obvious that a written declaration cannot have less effect than a spoken one ; and whatever effect may attend upon evidence of the latter should in fact be felt in greater force when the hand-writing of the party is produced to attest the deliberateness of the admission, and to impress the mind with the more perfect assurance that the admission was made.

Hence we may conclude that the evidence introduced of the sayings of Hamlin Rand, like those testified to by McDuffie at the time he made the survey, and his written words, whether contained in letters to the parties in interest, or entries upon his books, or the receipts which he wrote for others to sign, indicating that in the various acts that he performed in connection with the land he acted not for himself, but in subordination to the demand-

ant's title, as the agent or the tenant of the party then holding it, or in pursuance of a license derived from such party, are all competent evidence to establish a possession under that title, at the times those several acts were done.

Of this nature were the various entries upon the books of Hamlin Rand, in which he charged to those parties the expenses of the survey, or the taxes paid on the land, the identity of the land appearing from the entry itself. Of the same nature were the receipts written by him for the collectors to sign, in which the land is described as the land of those whose estate the demandant afterward acquired. Of the same nature, and of additional force upon another ground, are the entries in his books, in which he charges himself, as in favor of those parties, with the avails of the timber cut from the land; because such a charge is, for this additional cause, against his interest, rendering him accountable for a sum of money.

The admissibility of entries made against the interest of the party making them at the time, as evidence between other parties, upon the ground of their being against such interest, is established by many cases in which the principle has been discussed and applied. Several are referred to in the treatise of Professor Greenleaf (1 Greenl. Ev., sec. 120), who considers it as established. Among these cases is that of *Middleton* v. *Milton*, 10 B. & C. 317, in which there is a full examination of the authorities and a very distinct recognition of the doctrine. It was there applied to the case of a tax-gatherer, who, in his life-time, kept a private book for his own convenience, in which he entered the sums received in the course of his official duties, and the names of the parties who paid them. The book was decided to be evidence, in an action against his sureties, without producing the parties who had made the payments, that he had received those sums. And it is the same, although the book or account in which the entry is made contain an entry of the payment by

the party making it, or if the entry is itself the only evidence of the charge, of which it shows the subsequent liquidation. *Higham* v. *Ridgway*, 10 East 109; *Hoare* v. *Coryton*, 4 Taunt. Rep. 560. In *Rowe* v. *Brenton*, 3 Man. & R. 267, Lord *Tenterden* said, that this objection, if valid, would go to the very root of this species of evidence; and *Littledale*, J., said that a man was not likely to charge himself for the purpose of getting a discharge. In *Williams* v. *Geaves*, 8 C. & P. 592, the entries in a deceased steward's book were admitted, though the balance of the account was in his favor. Greenl. Ev., sec. 151.

The evidence afforded by the acts of the Goodwins, and the contract between them and Hamlin Rand, and the entries upon the books of the latter, charging himself with the timber cut from the land in pursuance of that contract, while they establish very clearly the entry of Rand on that occasion to have been in subordination to the demandant's title, do not clearly indicate whether that entry was, by him, made as the agent of those then claiming it, or under a license from them, to cut and account for the timber. Nor is that, in a general view, of any importance. But if the evidence should appear rather to favor the idea of an agency, then the minute which was shown in the hand-writing of Hamlin Rand, upon a bill of the timber drawn by the Goodwins to the mill as measured, assumes the character of an act performed in the regular discharge of that agency, and upon the precise ground of its being such was clearly competent evidence. It was part of a transaction which required such an act to be performed, as the measuring of the logs, and identifying, by a proper entry, the return of number and quantity, to serve as a basis of an account of the agency, afterward to be rendered. Greenl. Ev., secs. 115, 116. There was other evidence that tended more directly to show that he was the general agent of the parties referred to, and there

is certainly nothing in the transaction with the Goodwins, of a decisive tendency to the contrary, or which might not have been quite consistent with such a relation.

Some of the entries in the books appear not in the hand-writing of Hamlin Rand, but were made by others. One of these was a witness, who swears that he made certain entries by Rand's direction, which is of course the same as if the master himself had done it. Other entries derive the same force by the evidence of his ratification of them, furnished by a settlement of the accounts of which they form a part. These entries are subject to no just exception for having been made by a party not produced.

In the accounts kept of the timber taken from the land, and in some other accounts connected with it, the parties are named as " Watkinson and Rand." In other memoranda, or writings, the land is described as the land of Watkinson; and it became necessary for the demandant, who claimed the title of Watkinson under the deed of 1823, as to one half of the land, which he, in 1809, derived from the Gallups, to explain and give in evidence certain facts, which should show that Hamlin Rand, in accounting with Watkinson & Rand, did really recognize this title of Watkinson, and that all his acts proved were really under this title and no other, whether he, as in some instances, treated the land and its proceeds as the property of Watkinson & Rand, or, as in others, treated them as Watkinson's.

For this purpose it was not necessary to show whose the title really was, for the case leads us to suppose that that might have been difficult. It was sufficient that there was an understanding between Watkinson & Rand that they were jointly interested in the property. The plaintiff accordingly introduced the declarations of the parties themselves, that Daniel Rand claimed to be jointly interested with Watkinson in the purchase, and that

Watkinson admitted that he was so interested. It is said that such evidence is not sufficient to establish, for the benefit of Daniel Rand, any such interest in real estate. If not, it is sufficient to explain how the accounting by Hamlin Rand with Watkinson & Rand amounted to a recognition of the Watkinson title; and that was all that it was required for. We have no doubt that it was properly admitted for that purpose, whatever weight it may or ought to have had.

The competency of William Rand to testify is not affected by any evidence which the case presents. Neither is that of James Allen, who appears to have in his hands enough to indemnify him for any advances which he may have made, or become liable to make.

The evidence that was admitted to prove the signatures of certain receipts for taxes, was, as to some of those signatures, incompetent, the collectors not having been shown to be deceased. But the evidence was itself wholly irrelevant, and not in the least affecting the merits of the case either way. The actual payment of the taxes was not in issue; the receipts themselves were pertinent only by reason of the incidental recognition they contained, under the hand of Hamlin Rand, of the demandant's title to the land.

A like remark is applicable to the testimony of Ezra Sanborn, which did not reach the matter in issue. He did not know whether the cutting of timber, which he saw, was upon the lot in dispute or upon another.

The admission of such impertinent evidence was irregular. Its tendency in general is to perplex the jurors with false and immaterial issues, and is, by an unquestioned rule of law, excluded. But its admission does not, in all cases, and of necessity, avoid the verdict. Unless it shall appear to have had some undue influence, by reason of the direction of the court assigning to it importance, or for other cause in producing the verdict, there

seems no just ground for setting aside the verdict on account of its having been admitted. And so are the authorities. *Ellis* v. *Short,* 21 Pick. 142 ; *Commonwealth* v. *Bosworth,* 22 *id.* 397 ; *Buddington* v. *Shearer,* 22 *id.* 427 ; *Price* v. *Shepherd,* 9 *id.* 176 ; *Thompson* v. *Lathrop,* 21 *id.* 336.

The last question relates to the claim set up by the tenant for betterments, which arises under the statute of June 19, 1805 — N. H. Laws 75 — where the tenant holds the land " by virtue of a supposed legal title under a *bonâ fide* purchase, and which the occupant, or person under whom he claims, has been in the actual peaceable possession and improvement of, for more than six years," &c.

The occupancy for the requisite period was proved. The evidence adduced by the tenant himself was, that about twenty years previously he had declared that this was a lot to which no one had a legal title; that he had moved upon it to make himself a home ; that Rand pretended to have a claim to it, but that he did not think that Rand or any one else had any legal title to it. He also proved that he had declared that he had found a lot to which no one had a better title than he had. The case presents no evidence that the defendant ever purchased the land of any one, in any sense in which that word is commonly used. His own declarations negative the idea of any claim of title. He said that nobody owned the land. It seems, therefore, very clear that he has not brought himself within the provision of the statute.

It would seem, therefore, that the plaintiff is entitled to judgment upon the verdict, but for the exceptionable caption to Russell's deposition. But this, as has been said, may be amended. If that is done, and the caption returned to the files, there may then be

*Judgment on the verdict.*