### IN THE

## SUPERIOR COURT OF JUDICATURE,

### FOR THE

## COUNTY OF SULLIVAN, JULY TERM,

### A. D. 1838.

---

## GIBSON *vs.* BAILEY and a.

An administrator may foreclose a mortgage by a peaceable entry, and a continued actual possession for the term of one year, in the same manner his intestate might have done.

Where a mortgage is foreclosed by an administrator, the legal estate vests in the heirs, subject to the rights of the administrator as trustee.

If a tenant for years is sued in a writ of entry, he may plead that he is not tenant of the freehold, and defeat the writ. But if he pleads the general issue, he admits that he is in possession, claiming a freehold.

Prior possession under color of title or a claim of title, is sufficient to maintain a writ of entry against one who has no title.

But where the demandant has not been in possession, the tenant may, under the general issue, offer evidence to rebut the demandant's seizin.

Amendments of the records of towns must be made by the person who was in office at the time when the proceedings were had ; but it is not necessary that he should hold the office at the time of making the amendment.

Such amendments will be permitted on evidence showing the truth of the facts alleged, where the record is used as evidence in a suit pending in court.

The proper form of making such amendment is to draw out the amendment, and annex it, with the order of court allowing it, to the original record.

Where what is necessary in the proceedings of a town, although not formally entered of record, is so far stated as to lead to a belief that a correct record might have been made, a subsequent purchaser, of land sold for taxes, takes his title from the former owner, subject to a right to have the record put in form, if the truth will warrant it.

But if nothing appears upon the record, in relation to any particular fact which is necessary to be shown in making out a title under a sale for taxes, and nothing is set down from which it is naturally to be inferred that such fact existed, no amendment can be made to the prejudice of a subsequent *bona fide* purchaser under the original owner.

If the return of the collector, of his proceedings in making a sale of land for taxes, is put upon file in the town clerk's office, it is not necessary that it should be copied into the records.

WRIT OF ENTRY, to recover a tract of land in Unity. The premises were part of the original right of Mesheck Weare.

The tenants pleaded the general issue.

On the part of the demandant, it appeared, that on the 13th of June, 1818, Joshua Huntoon, and Daniel Huntoon, being then in possession of the land demanded, conveyed it in mortgage to one Cyrus Barnes, to secure the payment of a promissory note. Cyrus Barnes died without issue, leaving a mother and six brothers and sisters, and on the 15th of September, 1819, administration of his estate was granted to his brother, Samuel Barnes, who, on the 7th January, 1820, went to the premises, and told Joshua Huntoon that he had come to serve a writ of ejectment on him, on a mortgage given to his brother—that he was administrator of his brother's estate, and wanted the mortgage brought to a close. Huntoon then agreed to surrender the possession, and said Samuel Barnes executed to him a lease of the land. Huntoon remained in the occupation until October 23, 1820, when said Barnes leased the same to one David Bailey, who occupied more than a year.

On the 3d of February, 1826, Luther Barnes, another brother of Cyrus Barnes, executed to the demandant a deed of four undivided seventh parts of the premises; but no conveyance to him from any of the other heirs of Cyrus Barnes was exhibited.

Upon this evidence, the demandant claimed a right to recover one seventh part of the premises.

The tenants objected, that the demandant was not entitled to recover, because there was not sufficient evidence that said Samuel Barnes entered, as administrator, to foreclose—that whatever he did might have been done as heir—and that it was not shown that Luther had any connexion with the proceedings of Samuel; but the court overruled the objections.

On the part of the tenants, it appeared, that they were tenants for years of one Mazelda Keyes, and they set up a title to the premises in him, by virtue of a sale by John Thirston, collector of taxes for said Unity, December 20th, 1823. They introduced a deed from said Thirston, as collector, to one Daniel Gage—a quitclaim deed of the same premises from said Gage to "Sarah Cram and her children and assigns forever;" the deed reciting that the consideration was paid by her—and a warrantee deed of the same premises to said Keyes, from John Cram, the husband of said Sarah, signed also by said Sarah, but not acknowledged by her, and containing no words of conveyance by her, nor anything to show why she executed it. The demandant objected that John Cram, when he gave this deed, had no title, and could convey nothing; the title, if any, having been conveyed to his wife and children.

For the purpose of showing that the sale for taxes was valid, the tenants, among other evidence, introduced a record of a warrant for a town meeting, to be held on the second Tuesday of March, 1823, dated 22d February, 1823, and a return thereon as follows: "Unity, March 11, 1823. We, the selectmen of Unity, certify, that we have posted up a true copy of the within warrant, at the house of Francis Chase, fifteen days previous to said meeting;" which was signed by the selectmen. To the admission of this evidence the demandant objected; and the tenants thereupon moved for leave to amend the return and record. The court refused to grant leave to alter the records, but permitted the tenants, for the purposes of this case, to file an amended return, on affidavit of the facts, and subject to farther consideration; to which the demandant excepted.

They further offered a record of the election of John Thirston, as collector, at said meeting, with the addition, "Qualified by Francis Chase, Esq." The demandant objected, that it did not appear that said Thirston was duly sworn, as collector; and the tenants thereupon moved that a

certificate of the oath might now be made and recorded. The court refused to give leave to make an actual entry of a certificate upon the town records, but permitted an amendment to be filed, for the purposes of the trial, as if recorded ; to which the demandant excepted.

They also introduced a copy of an advertisement, on file in the town clerk's office, signed by said Thirston, as collector, dated September 26, 1823, notifying a sale of non-resident lands, in which this tract was included, on the 20th of December, 1823, at one o'clock, P. M.—with a return of the collector, setting forth that he proceeded to open the vendue at that hour, and that the land in question was struck off to Daniel Gage, for the sum of $4.76. With this evidence the tenants offered the affidavit of said Thirston, made Nov. 7, 1837, setting forth that he posted up the original notification, of which that was a copy, on the day of its date, at Francis Chase's tavern, in Unity—that the vendue was opened, at the place appointed, at one o'clock, P. M., on said 20th of December, and closed before six o'clock, P. M., and that the premises in question were struck off to Daniel Gage, who was the highest bidder, for $4.76. And upon this evidence the tenants moved for leave to file an amended return. The demandant objected, that the oath of the collector that he had posted up notice as the law requires, was invalid ; and that it was not competent to file such return, at this time, especially, as said Thirston had given a deed of the land, and was liable to defend the title, and could not now be permitted, by his own act, to make the title good that was not good when he gave the deed. The demandant further objected, that it did not appear that the sale was made between the hours of 10 o'clock, A. M., and 6 o'clock, P. M., or that said Gage was the highest bidder at the auction, but only that it was struck off to him—or that the doings of the collector were recorded by the town clerk, but only put on file. And the demandant objected to any amendment, and to supplying any deficiency apparent in the title set up by the ten-

ants, on the ground that she was a *bona fide* purchaser from one of the heirs of Cyrus Barnes, and took her title, it was to be presumed, with a knowledge of the defects in the title from the collector.

A verdict was taken for the demandant, by consent, for one seventh of the demanded premises, judgment to be rendered thereon, or the verdict set aside and judgment entered for the tenants, according to the opinion of this court on the foregoing case.

*Handerson*, and *C. G. Newton*, for the demandant.

*H. Hubbard*, for the tenants.

Parker, C. J. This case presents a " comedy of errors." The demandant claims title by virtue of a conveyance of four sevenths of the demanded premises from Luther Barnes, one of the heirs of Cyrus Barnes, deceased, who, at the time of his death, held a mortgage of the whole tract. It became the duty of Samuel Barnes, the administrator, to proceed and foreclose that mortgage, if the money was not paid. And he might, for this purpose, have maintained an action. 2 *N. H. Rep.* 71, *Bickford* vs. *Daniels*. But we are not aware of any rule that requires the administrator, in such case, to proceed by action, if the mortgagor is willing to surrender the possession. He may foreclose by peaceable entry, and a possession of one year, without process, as the mortgagee himself might have done. The case shows that Samuel Barnes entered for that purpose, and he must of course be presumed to have entered as administrator. The possession of his lessees was sufficient. 4 *N. H. Rep.* 424, *Kittredge* vs. *Bellows.*

The connexion of Luther Barnes with these proceedings, he being one of the heirs of Cyrus, results from matter of law.

The administrator had a right to attempt to enforce the

payment of the money, by pursuing all the remedies the law gave for that purpose. One of these remedies was by proceeding to foreclose the mortgage, if the money was not paid. But having failed to obtain the money, and the mortgage having been foreclosed, the legal estate was vested in the heirs, subject to the rights of the administrator as trustee, whatever those rights may be in this state. 1 *Williams on Executors* 431, 432, & *note h ;* 2 *Powell on Mortgages, by Coventry & Rand,* 666, *and note E ;* 3 *ditto* 968, 970 *and note N ;* 2 *Vern. Rep.* 66, *Clerkson* vs. *Bowyer ;* 3 *Johns. Ch. Rep.* 145, *Demarest* vs. *Wyncoop ;* 16 *Mass.* 23, *Smith* vs. *Dyer ;* 5 *N. H. Rep.* 429, *Southerin* vs. *Mendum.*

Whether the administrator has, in such case, any right to sell, except under a license from the judge of probate ; and whether the property, when the mortgage is foreclosed, is to be distributed as personal estate ; or whether, in case the administrator does not sell, it is to be treated as if the absolute fee had been conveyed to the intestate at the date of the mortgage, so that a widow would be entitled to dower only ; are questions upon which it is not necessary for us now to express an opinion. *Vide N. H. Laws* 334, 335, 367, 370.

In this case, a sale of the land does not appear to have been necessary for the payment of debts, nor was there any widow. Whether the mortgaged estate be considered as real or personal property, the shares of the heirs would be the same ; and, as no further proceedings were had by the administrator after the foreclosure, it may be taken, on the facts before us, that Luther Barnes had a title to one seventh of the demanded premises. The legal and beneficial interest were vested in the same persons. 5 *Conn. Rep.* 137, *Opinion of Hosmer, C. J.*

But there is no evidence to show that Luther Barnes ever had any title to more than one seventh ; and the demandant, therefore, can have no greater right. To this extent her action is supported, unless the title of her grantor, or of herself, has been in some way divested or defeated.

The tenants set up a title in one Mazelda Keyes, claiming to be his tenants for years. They should have pleaded that they were not tenants of the freehold, and defeated the writ. But, having filed the general issue, they admit that they are in possession, claiming a freehold. 8 *N. H. Rep.* 477, *Sperry* vs. *Sperry.*

It is conceded that they have no title. If, therefore, the demandant had shown herself to have been in actual possession prior to the tenants, she must have recovered against them. Because, having a color of title, and having been actually seized ; and the tenants having no title, and not being able to rebut her seizin, they could have had no rights against her, whatever might be the rights of others.

But the demandant shews no actual possession of herself, or of Luther Barnes, her grantor. And the defence is, that the land was duly sold for taxes, after the foreclosure of the mortgage, and before the conveyance by Luther Barnes to the demandant ; and that the title thus acquired has been conveyed to Mazelda Keyes, the lessor of the tenants.

Proof of these facts, then, will rebut the demandant's seizin, and thus furnish a defence against her. 2 *N. H. Rep.* 522, *Bailey* vs. *March ;* 3 *N. H. R.* 284, *S. C. ;* 5 *ditto* 156, *Berry* vs. *Brown.* If Luther Barnes had no interest in the land at the time of his conveyance, the demandant has never had actual or constructive seizin.

For the purpose of showing this, the tenants put into the case deeds which show that Keyes can probably have a valid title to but a very limited interest in the property.

Thirston, as collector of taxes, conveys to Gage, who, for a certain consideration, alleged to have been paid by Sarah Cram, conveys to " Sarah Cram, her children and assigns." A conveyance to the heirs of a deceased person has been held to be good. 12 *Mass.* 447, *Shaw* vs. *Loud.* A conveyance to the children of a particular individual, would seem to be within the same principle ; and, if so, this deed conveyed the land to Sarah Cram and her children, as tenants in common.

John Cram, her husband, then conveys the fee to Keyes. Her name is to the deed, but the acknowledgement of the receipt of the consideration is by him, and the words of grant, covenant, &c., are his alone.   There is nothing on the face of the deed to show why she signed it.

But, whatever portion of the land was conveyed by Gage's deed to Sarah Cram, of that John Cram was seized in her right, and his conveyance passed the right of possession. According to some cases, the mere signature of Mrs. Cram would convey nothing from her.   9 *Mass.* 161, *Lithgow* vs. *Kavenagh ; ditto* 218, *Catlin* vs. *Ware ;* 10 *Johns.* 435, *Jackson* vs. *Sears.*   The authorities in this state are somewhat different, but they do not come up to this case, and it is questionable whether this deed passed the title of Mrs. Cram.   2 *N. H. R.* 402, *Gordon* vs. *Hayward ; ditto* 525, *Elliot* vs. *Sleeper.*   But this question is unimportant here, for if the land has been duly sold for taxes, and conveyed to any third person before the conveyance by Barnes to the demandant, the tenants may show the title of such person, to rebut the demandant's seizin.   For this purpose it is not necessary to show a title in their lessor.

This brings us to the proceedings of the town, under which the land was sold for taxes, and the proceedings of the collector in making the sale.

And here it is admitted there are divers defects, which are fatal if they cannot be cured.   6 *N. H. Rep.* 182, *Proprs. of Cardigan* vs. *Page ; ditto* 194, *Nelson* vs. *Pierce.*

The return of the posting up of the warrant for the town meeting is insufficient.   It does not state when it was posted up.   Nor does it show that it was posted at a public place.

It does not appear that Thirston, who was chosen collector, took the oath of office prescribed by law.

And there are defects in the return of the collector, to which exceptions have been taken.

The tenants move that these proceedings may be amended.

It has been already settled that the records of towns may

be amended, to conform to the truth of the fact. 3 *N. H. Rep.* 513, *Bishop* vs. *Cone ;* 11 *Mass.* 477, *Welles* vs. *Battelle ;* 6 *N. H. R.* 182.

The amendment must be made by the person who was in office at the time. 2 *Pick.* 397, *Taylor* vs. *Henry.*

It seems probable that in the prior cases where amendments have been allowed, the officers who were permitted to make them were not in office at the time ; if they were, it must have been under a subsequent election, and the right to have the amendment made cannot depend upon the question whether the officer has again been elected.

The form in which such amendments are to be made, has never yet been settled. It would be very dangerous to sanction alterations of the books themselves, by erasures and interlineations. And we are of opinion that they should be made only upon evidence showing the truth of the facts, and then by drawing out in form the amendment which the facts authorize. The amendment, with the order under which it is made, may then be annexed to the books where the original is recorded, so that the whole matter will appear ; and, in furnishing copies, the original and amendment should both be furnished.

But it is objected, on the part of the demandant, that no amendment ought to be made to her prejudice. That when she purchased, these defects in the vendue title were apparent, and that she must be presumed to have purchased with knowledge that the title was defective.

The general rule is, that amendments of records are made with a saving of the rights of third persons, acquired since the existence of the defect. 4 *N. H. Rep.* 116, *Chamberlain* vs. *Crane ;* 6 *ditto* 459, *Bowman* vs. *Stark.*

To apply this rule, however, to all cases of defects in sales of land for taxes, would, in effect, be very nearly denying a right to amend ; as the owner of the land sold would attempt to defeat any amendment, by conveying to some friend, who would bring a suit in his behalf. It would, at least, be ne-

cessary to confine the application of the principle to cases where the land had been actually conveyed *bona fide.*

But instances might exist, where the purchaser, although he might not have found upon the records all that was necessary to make a formal and valid record, might have been well assured, from what he did find, that all that was necessary had in fact been done.

For instance, in relation to the two first defects in the records in this case—in the return of the warning of the meeting, and in the record of the oath of the collector—although these records are not sufficient in point of law, they lead the mind of any one to the belief that what was requisite was probably done. And in such cases, where the fact appears to be stated, but not in a formal manner, there is no reason that he who purchases should not be subjected to the same liability to have the amendment made, and the record put in form, that his grantor would have been, had he attempted to recover the land.

There are cases, where, although all that is required may not appear of record, it may be left to a jury to presume that all that was required was done. As in Bishop vs. Cone—although the application of the principle in that case may, perhaps, have been questionable, on account of the transactions having been so recent, that, if the truth would have warranted it, an amendment might have been made. Whether that principle could be applied against a subsequent purchaser, it is not necessary to determine. But where what is necessary, is, although not formally stated, so far set down as to lead to a belief that a correct record might have been made, there seems to be no reason why a purchaser, who has access to the records, should not take it subject to a right to have the record put in form, if the truth will warrant it.

Where, on the other hand, nothing appears upon the record in relation to any particular fact necessary to make out a title, nor is any thing set down from which it is naturally to be inferred that the fact existed, a subsequent *bona fide* purchaser

ought not to have his title defeated by supplying a record instead of amending a record.

Upon these principles, if the facts will warrant it, the return in relation to the meeting may be so amended as to show the time when the warrant was posted up, it being stated in the original record to have been fifteen days before the meeting ; and that Francis Chase's, where it is stated to have been posted, was a public place. So as to the record stating that Thirston, the collector, was "qualified by Francis Chase, Esq. ; " an amendment may be made, setting forth that the oath, prescribed by law, was administered to him by Francis Chase, a justice of the peace.

So, if the truth will admit of it, the return of the collector, that he "proceeded to open the vendue at one o'clock, P. M.,' &c., may be amended, by stating that the sale was closed before six o'clock, P. M.—and to the fact, that it was struck off to Gage, may be added that he was the highest bidder, if such was the fact.

We must first have evidence to show that these amendments may be made with truth ; and, if made, they must be upon such terms as shall appear to be just, when the whole matters are before us.

The objection that the return of the collector is not recorded, but only put on file, cannot avail. *N. H. Laws, 565.*