# GORDON *v.* CLIFFORD, TILTON, FOGG AND PIKE.

Under the provisions of section 1, chapter 38, of the Compiled Statutes, select-
men of towns may be chosen at any meeting of the town legally called, when
no choice was made at the annual meeting. But the warrant calling the
meeting must state the object for which it is called.

It seems that if the warrant calling the me ... be defective in not stating the
ol , ... advant e cannot be taken of the defect, against a collector exe-
cuting a warrant iss ed by selectmen chosen at such a meeting. The collector
will be protected by the provisions of section 16, chapter 48, of the Compiled
Statutes.

Where a statute required that the town clerk should make a record of every
oath of a town officer, "the import of which record may be that the officer
took the oath of office prescribed by law," and it appeared that the record
made of a collector's oath was, that "he took the oath by law required;" it
was held sufficient.

Where an arrest and commitment were made by a collector under a warrant for
the collection of taxes, and he neglected to make upon the copy of the war-
rant left with the jailer a scrawl or letters "L. S." indicating the place of the
seal upon the warrant—*held*, that the defect in the copy could not make the
collector liable in an action of trespass.

Where a statute required that the collector of taxes "shall give notice of such
tax to every person taxed, or leave a notice thereof in writing at his usual
place of abode,"—*held*, that it was not imperative upon the collector to give a
written notice in all cases, and the fact that his warrant directed him to give
a written notice in every instance did not render it obligatory upon him to
do so.

The provisions of section 13, chapter 38 of the Compiled Statutes, that "the real
estate of every person or corporation against whom any tax may be assessed,
shall be holden for such tax for one year from the first day of June follow-
ing," &c., are cumulative, and do not prevent an arrest in case there be no
goods or chattels whereon to make distress, or in case the tax payer has re-
moved from town.

A dwelling house is a protection from arrest upon civil process to the occupant,
his children and domestic servants, and to all who have for the time being a
legal residence in the house. But a domicil existing by fraud affords no pro-
tection.

Where the plaintiff removed to another town to the house of her son-in-law,
and the object was to avoid the payment of a tax against her—*held*, that a
collector might lawfully open the outer door to make an arrest.

A collector cannot justify an arrest by virtue of a list and warrant where the
list is not signed by the selectmen. Such a process is void upon its face.

TRESPASS, for arresting the plaintiff on the ninth day of January, 1850, at Stratham, in this county, conveying her to Exeter, and confining her in jail until she paid the sum of $101,53.

Clifford and Tilton justified as collectors of Epping; Clifford for 1846, and Tilton for 1847, and each as servant of the other.

The plaintiff was an inhabitant of the town of Epping until February, 1848, but since that time has resided in the family of Stephen Scammon, her son-in-law, at Stratham.

The plaintiff's counsel made several objections to the validity of the warrants to the collectors and their authority under them, all of which the court overruled and the plaintiff excepted, as follows:

I. Clifford's warrant was signed by selectmen, chosen at a meeting warned on the 10th of March, 1846, and holden on the 28th of that month, although an annual meeting had been duly held on the second Tuesday of March, 1846, but which was dissolved without electing any town officers.

II. According to the record the collectors took " the oath by law required," before the town clerk, which was the only evidence of their having been duly sworn.

III. The copy left with the jailer had nothing upon it to indicate that his warrant was under seal.

IV. The selectmen did not sign the tax lists, otherwise than in the following manner—the lists and warrant were in the same book, the former immediately preceding the latter, and being directly referred to by it, in the words, " the lists aforesaid," and the selectmen wrote their signatures at the close of the warrant.

V. The warrants authorized the collectors to distrain after giving a written or printed notice, and it did not appear that any such notice was given.

VI. The warrants authorized the sale of real estate within one year, and the arrest was long after the expira-

tion of a year from the date of the warrant, and in another town.

The evidence tended to show that when the collectors arrived at the dwelling house of Stephen Scammon, in order to arrest the plaintiff, they found the outer door fastened, and were refused admittance by Mrs. Scammon, but the door was opened by Fogg, one of the defendants, without her consent, and thereupon the collectors entered and made the arrest. But there was also evidence tending to prove that Scammon's object in removing the plaintiff to Stratham and making her a member of his family, was to prevent the collection of the tax and protect her from an arrest by the collectors ; and the court instructed the jury that if such was the object, the collectors, after a request that the door might be opened and a refusal, might lawfully break the house to arrest her, because Scammon had received her in bad faith.

The court also instructed the jury that notice of the tax which the statute required before an arrest, need not be in writing, nor to the plaintiff in person, but was sufficient if given to Scammon, provided the jury believed, from the evidence, that he was her general agent for the transaction of all her business.

The plaintiff's counsel also excepted to the ruling of the court, admitting the testimony of Henry Tilton of the declarations and acts of Mrs. Scammon in March, 1849. Upon this point the witness testified that he and his brother, James P. Tilton, found Scammon at town meeting, and his brother asked him to pay the tax, but he refused. His brother told him he must go down and see the plaintiff if he would not pay it. They went down, but before reaching the house met Scammon returning from it; and going to the house his brother knocked, and Mrs. Scammon answered that there was no entrance. His brother asked if she would " pay her mother's tax, or let him go in and see her mother," but she refused to do either; said " she would not pay the tax; they had paid taxes enough to the creatures

up in Epping;" she would "not have her mother carried off to jail," and if he attempted to break in, she would strike him down with an axe which she held in her hand.

Mrs. Scammon had been cross examined in relation to this transaction, and had denied all recollection of it, and Scammon and his wife had both testified that the taxes had nothing to do with the plaintiff's coming to Stratham.

From the death of her husband in 1845, until February, 1848, the plaintiff had lived on the farm which had been owned by him in Epping, and which after his death was carried on by a tenant. She is now about eighty-four years of age, and Mrs. Scammon is her only child.

The jury returned a verdict for the defendants, Clifford and Tilton, which the plaintiff moved to set aside for alleged error in the rulings and instructions of the court.

The two other defendants, Pike and Fogg, pleaded the general issue, and a verdict was returned in their favor, as well as for the other defendants. No exceptions were saved in relation to Fogg and Pike.

*Wells*, for the plaintiff.

The tax in this case was assessed in 1846. The husband of the plaintiff died in 1845. She remained in Epping until February, 1848, and there was no attempt to collect the tax until 1850.

Whenever or wherever a person takes up a permanent residence, his house becomes a castle, and cannot be invaded, whatever the motive that induced the removal. The right to break and enter is confined to those houses where the debtor has a mere temporary residence. The case finds that the plaintiff has resided in the family of Scammon ever since February, 1848, and this is sufficient to give her a permanent residence there.

But we say further upon this point, that the fact that she remained in Epping from 1846, the time of the assessment of the tax, till 1848, and no attempt being made during that

time to collect the tax, negatives the idea that she could have left with the view of avoiding the collection of the tax. *Oystead* v. *Shed & a.* 13 Mass. Rep. 521; *Curtis* v. *Hubbard,* 1 Hill, 338.

The defendants had no right to impeach the testimony of Mrs. Scammon by the evidence of Henry Tilton, as her cross examination was upon matters clearly collateral.

In this case the town of Epping took the defence of the whole matter, and indemnified the collectors, and they attempt to show that the election of selectmen on the 28th of March, 1848, was legal. But we say the selectmen should have been chosen at the annual meeting, or at some other legal town meeting held for that purpose; neither of which is found by the case.

The collectors should show themselves legal officers, but the record produced does not show them legally sworn. *Proprietors of Cardigan* v. *Page,* 6 N. H. Rep. 182; *Welles & a.* v. *Battelle & a.,* 11 Mass. Rep. 481; *Cavis* v. *Robertson,* 9 N. H. Rep. 528; *Johnson* v. *Wilson & a.,* 2 N. H. Rep. 207.

A warrant and rate bill, to justify a collector of taxes, must upon its face be legal. 1 D. Chipman's Vt. Rep. 182.

Our statute requires every tax warrant to be under the hands and seal of the selectmen. A warrant not sealed is void. 1 Hale 465, note; *Tackete* v. *The State,* 3 Yerger, 392; *Hutchins* v. *Edson,* 1 N. H. Rep. 139.

The collector is to give to the jailer an attested copy of his warrant. The seal is a part of the warrant, and should be copied in the ordinary and common way.

The selectmen should have signed the list of taxes by them assessed, unless the express requirement of the statute can be dispensed with. " A list of all taxes by them assigned shall be made by the selectmen, under their hands." Rev. Stat. ch. 43, § 8. In this case the list was not signed.

A tax bill delivered to a collector of taxes, which is not signed, with the warrant in legal form, held that the war-

rant annexed to it was insufficient. *Foxcraft* v. *Nevens*, 4 Greenl. 72.

The statute requires the collector to give fourteen days notice before distress made. Rev. Stat. ch. 45, § 2. We believe the practice is uniform in this State to give written or printed notices, and that such is regarded as the true construction of the statute. It is a proceeding which should require written notice. *Gilbert* v. *Columbian Turnpike Co.*, 3 Johns. Cases, 107; *Matter of Cooper*, 15 Johns. 533.

The warrants required the collectors to give written or printed notices, which was never done.

*McMurphy* and *Marston*, for the defendants.

We shall consider the exceptions in the order stated in the case.

I. No choice of selectmen having been made on the second Tuesday of March, the town was authorized to choose such officers at any other meeting duly notified for that purpose. Com. Stat. ch. 38, § 1.

II. The record of the collector's oath on the town clerk's book, that the collector took " the oath by law required," is a sufficient record, being in words of the same import as those of the statute. Com. Stat. ch. 37, § 8.

III. This objection can only prevail on the ground that the omission to indicate the place of seal on the copy, made the collector a trespasser *ab initio*. But an officer clothed with authority to do any particular act can render himself a trespasser, *ab initio*, only by an abuse of that authority. And this rule was instituted to prevent an authority in law from being turned into an instrument of injustice and oppression. *State* v. *Moore*, 12 N. H. Rep. 42; *Barrett* v. *White*, 3 N. H. Rep. 227.

An act lawfully done cannot be made unlawful, *ab initio*, unless by some positive act incompatible with the exercise of the legal right to do the first act. *Gates* v. *Lounsbury*, 20 Johns. 427.

IV.   The signing of the warrant referring to the list was sufficient to protect the selectmen in a suit against them for an illegal assessment.   But even if it were not, it is a sufficient answer in the present case, that the collectors can only be made liable for their own official misconduct, and not by reason of any irregularity or illegality on the part of the town or selectmen.   Com. Stat. ch. 48, § 16.

V.   The statute requires that the collector shall give notice of the tax, or leave a notice in writing, fourteen days before he shall distrain therefor, unless in cases where he has reason to believe such person is about to remove from town.   Com. Stat. ch. 48, § 2.   The warrant could not make it incumbent on the collector to do an act not required by statute.

VI.   There was no evidence that the plaintiff owned real estate.   The time for collecting the tax was not limited by law.   But the powers of collectors continue until all taxes in their lists are collected.   They are also authorized to distrain property, or to commit the body of any person named in their list, (in case of removal from town,) wherever such person or property may be found   Com. Stat. ch. 48, §§ 1 to 10.

VII.   Scammon, who owned the house, got the plaintiff there for an improper purpose; and the plaintiff assented to and participated in the scheme of concealment to prevent arrest.   Scammon being her agent, and making use of his house for a bad purpose, cannot, in this action, object that his house was broken.

The house of Scammon was not the castle of the plaintiff.   She being there for an improper purpose, cannot claim the privilege of her agent's house as a protection from arrest.   This protection does not extend to a stranger, nor to one who seeks refuge there to avoid the payment of his debts, or to prevent the service of legal process. *Isley* v. *Nichols*, 12 Pick. 270; *Platt* v. *Brown*, 16 Pick. 553; *Rat-*

*cliff* v. *Barton*, 3 B. & P. 223; 1 Smith's Leading Cases, 39, and note; *Oystead* v. *Shed & a.*, 13 Mass. Rep. 521.

VIII. The testimony of Henry Tilton was competent to contradict Mrs. Scammon, if her testimony was material, and if her testimony was not material, then the contradiction was simply immaterial; and a verdict will not be set aside on account of the admissibility of immaterial evidence. *Jewett* v. *Stevens*, 6 N. H. Rep. 80; *Hamblett* v. *Hamblett*, 6 N. H. Rep. 333.

The testimony of Mrs. Scammon was material, because she testified that the taxes had nothing to do with the plaintiff's going to their house, while the testimony of Tilton tends to prove that her residence at Scammon's was intended to screen her from the payment of the taxes in question.

EASTMAN, J. The first exception taken by the plaintiff upon the trial of this cause, was to the official character of the selectmen who signed the warrant, by virtue of which the plaintiff was arrested. It appears that the selectmen were not chosen at the regular annual meeting for the choice of town officers that year, but at a subsequent meeting, the annual meeting having been dissolved without the choice of any town officers.

The statute provides that " when any person elected to any town office shall not accept the same, or shall die, resign, remove from town, or become insane, in the judgment of the town, or where no annual meeting shall have been holden for the choice of town officers, or no choice has been made, or when there shall be a vacancy in any other way, the town may choose such officer at any legal meeting holden for that purpose, or at the adjournment of the annual meeting." Com. Stat. ch. 38, § 1.

The meeting at which these officers were chosen appears to have been seasonably warned, and the statute clearly provides for a meeting and election, where no choice has been made at the annual meeting, as was the case here.

And the only ground upon which this exception can be sustained is that stated in the argument, viz., that the case does not show that the meeting on the 28th of March, at which the selectmen were chosen, " was held for that.purpose." In other words, we suppose the objection to be, that there was no article in the warrant, calling the meeting on the 28th, for the choice of these officers. The statute provides that the meeting must be held for that purpose ; and, consequently, unless the warrant set forth the object of the meeting, an election would be defective.

It does not unequivocally appear by the case sent up that the warrant was perfect in this respect, but until the contrary is shown, we shall presume that it was, inasmuch as the point is not distinctly taken in the case. Had the warrant calling the meeting been defective in this respect, we think it would have been made to appear at the trial, so as to place the fact beyond doubt. As the case stands, this exception must be overruled.

We might suggest the inquiry, in connection with this exception, whether, even assuming that there was a defect in the warrant calling the meeting at which the election was made, any advantage could be taken against the collector, if those signing the warrant were acting as selectmen of the town. The sixteenth section of chapter 48 of the Compiled Statutes provides, that " no person to whom any list of taxes shall be committed for collection shall be liable to any suit or action by reason of any irregularity or illegality of the proceedings of the town or of the selectmen, nor for any cause whatever, except his own official misconduct." The provisions of this section of the statute are very broad, and would seem to form a perfect shield for the collector against all liability upon this ground.

The second exception was, that the collectors did not show themselves legal officers ; not being legally sworn.

The statute requires that the town clerk shall make a record of every oath of a town officer, " the import of which

Gordon *v.* Clifford.

record may be that the officer took the oath of office pre-
scribed by law." Com. Stat. ch. 37, § 8. The record in this
case was, that the collectors "took the oath by law re-
quired." And this, we think, was sufficient. The statute
is not imperative as to the precise phraseology that shall be
used. If the substance is entered upon the record it is suf-
ficient.

We are aware of the decision in *Gibson* v. *Bailey & a.*, 9
N. H. Rep. 168, and of *Ainsworth* v. *Dean*, 1 Foster's Rep.
400, in which it was held that where the record states the
officer to have been " qualified by A. B." and nothing fur-
ther appears, it is insufficient. But there is a marked dis-
tinction between the record in those cases and the one be-
fore us. " Qualified," may indicate that the person took
some oath, but it does not show, nor can it be legally infer-
red therefrom, that he took the oath of office prescribed by
law. Whereas, as it appears to us, it would be difficult to
point out any substantial difference between " took the oath
of office prescribed by law," and " took the oath by law re-
quired."

But even should we hold the record insufficient, it might
be amended. *Gibson* v. *Bailey & a.*, 9 N. H. Rep. 168;
*Cavis* v. *Robinson*, 9 N. H. Rep. 524.

The third exception was, that the copy of the warrant left
with the jailer by the defendants, had nothing upon it to in-
dicate that the warrant was under seal. There is no sug-
gestion that the warrant itself was not under seal.

The statute provides that for want of goods and chattels
whereon to make distress, the collector may take the body
of any person neglecting or refusing to pay the tax assessed
against him, and commit him to the common jail. Com.
Stat. ch. 48, § 8. And the next section provides that in
such case the collector shall give to the jailer an attested
copy of his warrant, and thereupon certify the sums such
person is taxed in his list, &c.

Now it is sought to charge the defendants in trespass, be-

cause there was nothing upon the copy left with the jailer indicating that the warrant was under seal; that is, as we understand the objection, there was no scrawl or letters " L. S." upon the copy, as is the usual custom in making copies of instruments upon which there is a seal. Without deciding whether, had the action been brought against the jailer instead of the collectors, the copy would have been a sufficient justification for him for detaining the plaintiff in custody, we are of opinion that so far as the defendants are concerned, this defect, if it be one, is not available to the plaintiff in this action. The warrant by which the arrest and commitment were made was under seal. In committing the plaintiff to jail, the defendants acted under their warrant, and not under the copy. The copy was the precept by which the jailer detained the party in custody, and was not acted under until after the commitment, when the prisoner passed from the custody of the defendants to that of the jailer. The precept by which the defendants held the plaintiff being legal, the only way in which they could be made liable, in this form of action, for such a defect, must be to hold them as trespassers, *ab initio.* But that cannot be done; for in order to make a person, who has acted with propriety under legal process liable, *ab initio,* for subsequent illegal acts, it must be shown that he has abused the authority under which he acts. •This is the doctrine recognized by the authorities, and will be found, in substance, in *State* v. *Moore,* 12 N. H. Rep. 42; *Ordway* v. *Ferrin & a.,* 3 N. H. Rep. 69; *Barrett* v. *White & a.,* 3 N. H. Rep. 210.

This error is at best a mere non-feasance in copying the warrant; a clerical mistake in not putting upon the copy some hieroglyphics indicating that there was a seal upon the warrant, and its place. All the language of the warrant is correctly copied, and the indorsements required by statute properly made, and we do not think that this error in making the copy can or should render the officers trespassers, *ab initio.*

Another exception taken by the plaintiff was, that the warrants did not authorize the collectors to distrain until after giving written or printed notice, and that it was not shown that any such notice was given.

The statute does not require the notice to be in writing, except where it is left at the usual place of abode of the tax payer. The section is as follows: " The collector shall give notice of such tax to every person taxed, or leave a notice thereof in writing at his usual place of abode, fourteen days, at least, before he shall distrain therefor, unless in cases where he has reason to believe such person is about to remove from town." Com. Stat. ch. 48, § 2.

Section 10 of the same chapter provides that " in case of removal from town, or of an assessment upon the personal property of non-residents, the collector may distrain the property, or arrest the body of any person named in the list, wherever such person or his property may be found."

Taking these two sections together, it is by no means certain that any notice is necessary where the person removes from town. Indeed, without deciding the point, such is our impression. But it is clear that a written notice is not in all cases necessary. It is only when left at the usual place of abode that the statute makes it imperative to give such a notice.

The exception was not, that notice was not given, but that it was not given in writing, according to the terms of the warrant. But the warrant cannot impose upon the collector more formality or greater duties than the law exacts, and such requirement in the warrant is mere surplusage, and may properly enough be disregarded by the collector, where the facts are as presented here. This exception must, of course, be overruled.

A further exception was, that the warrants authorized the sale of real estate within one year, and the arrest was long after the expiration of a year from the date of the warrants, and in another town.

This clause in the warrants was in accordance with the 13th section of chapter 48 of the Compiled Statutes, which provides that " the real estate of every person or corporation against whom any tax may be assessed, shall be holden for such tax for one year from the first day of June following, and may be sold by the collector in case such person shall die or remove from town, and leave there no personal estate on which distress can be made, or in case such person or corporation shall neglect or refuse to expose goods whereon distress may be made." This section does not in any way conflict with the other sections which we have cited, but provides further remedies in the instances specified. It does not prevent an arrest in case there be no goods and chattels whereon to make distress; nor does it prevent an arrest or distress, where the person has removed from town.

But apart from this view of the statute, it is a sufficient answer to this exception to say, that the case does not show that the plaintiff owned any real estate in Epping. It finds that from the death of her husband in 1845, until February, 1848, the plaintiff had lived on the farm which had been owned by him in Epping, and which, after his death, was carried on by a tenant. This is all we have upon the subject; and whose the farm was during her residence upon it is not stated. Before this exception could prevail, it should distinctly appear that the plaintiff owned real estate at the time.

The next point presented raises a question of considerable importance, as settling the right of the defendants to enter the house of Scammon, the plaintiff's son-in-law, at Stratham, for the purpose of arresting the plaintiff. Upon this point the case finds that " the evidence tended to show that when the collectors arrived at the dwelling house of Stephen Scammon, in order to arrest Mrs. Gordon, they found the outer door fastened, and were refused admittance by Mrs. Scammon, but the door was opened by Fogg, one of the defendants, without her consent, and thereupon the

collectors entered and made the arrest. But there was also evidence tending to prove that Scammon's object in removing Mrs. Gordon to Stratham, and making her a member of his family, was to prevent the collection of the tax, and protect her from an arrest by the collectors; and the court instructed the jury, that if such was his object, the collectors, after a request that the door might be opened, and a refusal, might lawfully break the house to arrest her, because Scammon had received her in bad faith."

Under these instructions the jury must have found that the plaintiff's residence at Stratham was with the fraudulent design of avoiding the payment of the tax, and the question whether the collectors could lawfully enter the house, assuming the plaintiff to have been rightfully there, after the outer door had been opened by Fogg, does not arise. The point is upon the correctness of the instructions given by the court.

The doctrine that a man's house is his castle and cannot be forcibly entered for the execution of civil process, is well established. No man can be arrested in his own house upon such process, provided the outer door be shut. But if the outer door be open, an officer, having gained admittance, may break open an inner door to arrest a defendant. 16 Johns. 287; Cowp. 1; *Williams* v. *Spencer*, 5 Johns. Rep. 352; *Fitch* v. *Loveland*, 1 Kirby, 386; *Hubbard* v. *Mack*, 17 Johns. 127; 8 Taunt. 250.

This protection from arrest in civil process extends to the occupant, his children and domestic servants, but how much further, is not clearly settled. *Foster*, *Hale*, and *Coke*, in treating of the inviolability of dwelling houses, say that the outer doors or windows shall not be forced by an officer in the execution of civil process against the occupier or any of his family who have their domicil or ordinary residence there; but that the house shall not be made a sanctuary for other persons; so that, if a stranger, whose ordinary residence is elsewhere, upon a pursuit, take refuge in the house

of another, the house is not his castle, and the officer may break open the doors or windows in order to execute his process. Foster's Crown Law, 320 ; 2 Hale, 117 ; 5 Coke, 93 ; 1 Hale, 459.

In *Oystead* v. *Shed*, 13 Mass. Rep. 520, *Parker*, C. J., in speaking of the rule as laid down by Foster and others, says that according to these principles, not only the children and domestic servants of the occupier are of his family, and so entitled to protection, but also permanent boarders, or those who have made the house their home, may properly be considered as a part of the family. But in the same opinion it is stated that a stranger, or perhaps a visiter would not enjoy the same protection ; for as they have acquired no right to remain in the house, if the occupant should refuse admission to the officer after his purpose and his authority were made known, the law would consider him as conspiring with the party pursued, to screen him from arrest, and would not allow him to make his house a place of refuge. See, also, *Still* v. *Wilson*, 1 Wright, 505.

The effect of the decisions seems to be, that all who have for the time being a legal domicil in the house, all who have a legal right to remain in it, will be protected.

But a domicil existing by fraud, and taken up with the express object of defeating the collection of a tax, cannot and should not come within the rule. As stated by Chief Justice *Parker*, in the views quoted, the law would consider the transaction a conspiracy, and would not allow the house to be made a place of refuge to screen the party from arrest.

We think, then, that the instructions of the court upon this point were correct ; and the jury having found the domicil of the plaintiff to have been fraudulent, the defendants had a right to enter the house and make the arrest, whether the outer door was open or not.

But notwithstanding our opinion upon the various exceptions considered, and notwithstanding we are inclined to think that the testimony of Henry Tilton might be admit-

ted upon the ground of contradicting Mrs. Scammon on a material point, to wit, the object of the plaintiff's residence at Scammon's house, yet there is one exception upon which the verdict in favor of the collectors must be set aside.

The fourth exception was, that the selectmen did not sign the tax list accompanying the warrants. The lists and warrants were in the same books, the former immediately preceding the latter, and were directly referred to by it in the words " the lists aforesaid," and the selectmen wrote their signatures at the close of the warrants. But the lists were not signed; and this was contrary to the express requirement of the statute, and the decisions upon it. Com. Stat. ch. 45, § 8; *Chase* v. *Sparhawk*, 2 Foster's Rep. 134; *Foxcroft* v. *Nevins*, 4 Greenl. 72; *Colby* v. *Russell*, 3 Greenl. 227.

In *Chase* v. *Sparhawk*, we held that selectmen cannot justify a distress for taxes under a list and warrant like those in this case; and that they are answerable in an action of trespass for the act of the collector in the seizure of property for the enforcement of the collection of taxes, in pursuance of the direction contained in the warrant. The only way in which these collectors can be shielded from the effects of this requirement is by the provisions of the 16th section of chapter 48 of the Compiled Statutes, before cited; and we have examined this point with an inclination to protect the defendants, under these provisions, if it could be done. But we can discover no way in which it can be. The list of taxes makes a part of the precept by which the distress or arrest is made; and it is incomplete and illegal if the list is not signed. It is not a process authorized by law, and it shows upon its face that it is not; and it cannot therefore protect the collector, or any one acting under it. If the warrant were in due and legal form, and regular upon its face, the officer would be protected, notwithstanding any irregularity or illegality committed by the selectmen or town in assessing or voting the taxes, or issuing the warrant.

Com. Stat. ch. 48, § 16; *State* v. *Weed,* 1 Foster's Rep. 262. But a collector cannot be protected in acting under a process illegal and defective upon its face. Without the legal requisites to make it valid, it is no protection any more than if the collector acted without a warrant. It is in fact no warrant, and in executing it, he acts, or undertakes to act in his office without any authority, and is therefore guilty of official misconduct.

It appears that this exception was taken as to two only of the defendants, Clifford and Tilton, who were the collectors; and the result therefore is, that judgment be entered on the verdict as to all the defendants except Tilton and Clifford, and that as to them it be set aside.